H. L. SMITH *v.* WILSON.

A co-proprietor, in possession of lands owned in common, has no right in the absence, and without the express assent, of his co-proprietor, to make unnecessary improvements, e. g. building cabins, planting orchards, &c., and compel the absent owner to contribute therefor.

If the expenditures made be such as it was lawful for one proprietor to make in the absence, and without the knowledge of, the other, then the liability of the latter is for an equal share of the expense, accompanied with an equal participation in the resulting benefit.

The duty of the co-proprietor who is present and in actual possession, is to take the same care of the property, as if it was wholly his own.

APPEAL from the Second District Court of Plaquemines.  *Rousseau*, J.   *A. Hennen*, for plaintiff and appellant:

But the Court finds another objection to the proceeding, as it was a *partnership* between the parties, and to be settled as such; and one partner cannot sue another for any specific claim in relation to it, but there must be a general settlement of all partnership accounts.   This is admitted to be the law in partnerships; but there was no partnership between the co-proprietors here; there was only a *community* of property, which does not constitute a partnership.

This distinction is directly recognised by our Civil Code, Art. 2777.

"A community of property does not of itself create a partnership, however the property may be acquired, whether by purchase, donation, accession, or prescription."  [See also Arts. 820, 1214.

SMITH
*v.*
WILSON.

The same question was discussed fully in the Roman law, and decided in the same manner, and the jurisprudence has come down to us unvaried. [See Pothier's Pandects, lib. 17, 2, 30; *contrat de société,* Nos. 181, 187, 191; Domat, p. 1, lib. 2, tit. 5; § 2, No. 3; 6 N. S. 616, *Percy* v. *Millaudon.*

What were the duties of the co-proprietor, *Smith,* who had the actual possession of the common property—his co-proprietor being absent and having left no one to represent his interests?

They are laid down distinctly by Domat, p. 1, lib. 2, tit. 5, § 2, No. 2: to manage and take care of the common property, as he would of his own. *Smith* considered it his interest to put the plantation in a state of cultivation, and make a levee in front and rear of it; cut canals, ditches, make roads and fences, build houses, and particularly plant the whole in orange trees, as the most direct method of rendering the estate profitable. The capital invested in its purchase $3,000 in 1809, and the same sum in 1847, was idle; for the place was, according to the evidence of all the witnesses, *in a state of waste.*

*Smith* acted in *good faith* when planting orange trees on the plantation, instead of cultivating it in rice, as some of the witnesses say would have been more advantageous; though others express very strongly a contrary opinion, and prefer the planting of orange trees. He was bound only to act according to the best of his own judgment, and to manage the plantation as he would his own property. That he did so, cannot be doubted. [See Domat, p. 1, lib. 2, tit. 5, § 2, No. 2.

The Court will also consider that the taxes on the plantation, amounting to $115 for the last year, have been paid regularly since 9th April, 1847, by *Smith;* the nine negroes which he hired from *Bahan,* [p. 34,] and the other laborers, [p. 37,] have also been paid for their services, and for those advances interest is due thereon by law. [Domat, p. 1, lib. 2, tit. 5, § 2, No. 4.

By the Roman law, among necessary expenses, which the husband was required to make on the dotal effects of the wife, at his peril, were, "moles in mare vel flumen projectas"—levees. He was compensated, also, for such necessary works, as planting vines, taking care of trees, forming nurseries. "Vel si vites propagaverit, vel arbores curaverit, vel seminaria, pro utilitate agri fecerit necessarias, impensas fecisse videbitur. [Pand. lib. 25, tit. 1, l. 1–3.

Among the useful expenses made by the husband for the same purpose, is enumerated the planting of trees "—Veluti si *novelletum* in fundo factum sit." Ibid, l. 6, Lib. 5, tit. 3, l. 39.

When the same improvements have been made by one co-proprietor on the common property, the other is bound, for stronger reasons, to reimburse his portion of their value, on the great principle that joint owners must contribute rateably to useful expenses incurred on the property by a joint owner having the management of it. 6 N. S. 616, *Percy* v. *Millaudon.*

By these principles is a recovery sought in this action for the amount of one-half of the value of the ameliorations now existing on the plantation, and by which the common interests of the co-proprietors have been enhanced to the extent of $30,000. Story's Equity, § 1289.

As regards the claim of the State of Louisiana to the undivided moiety of the plantation, *by escheat,* in consequence of the supposed death of *W. Wilson,* without heirs, the plaintiffs have little to say. They deny, however, his death by an exception, peremptory in its nature, made to the intervention.

The State cannot recover the property from the plaintiff until it shall have discharged the amount due for its preservation, expended by *Smith;* for there is a privilege on the land for such claim. [C. C. Arts. 3191, 3193.] The whole amount of the claim, as stated, is, in fact, all for the preservation of the property.

But there is no proof of the death of *W. Wilson,* by witnesses, as required by law. 5 An. 265, *Marcos* v. *Barcas.*

*Lombard,* for defendant:

Plaintiff and defendant are joint owners, not partners, and our Code has specially provided, that a community of property does not of itself create a partnership; C. N. S. p. 616, *Percey* v. *Millaudon.* In that case, *Percy* who owned one fourteenth of a sugar plantation, was present, he as well as *Millaudon,* had the control and management of said sugar plantation.

Was the administration of *Smith* that of a negotiorum gestor? It was that of an intermeddling trespasser. His management has not been such as to

bring him within the purview of articles 2272, 2273, 2274, 2275, 2276, 2277 and 2278 of the Civil Code of La. *Smith* is now in the shoes of *Burney*, in the case of *Baillio* v. *Burney*, et als., reported at page 317 of the 3d volume of Robinson's Reports. He is a tresspasser. He has taken possession of a land to which he had an interest of one undivided half only, instead of provoking a division or partition. He has fallen down the trees, sold the wood, appropriated the money himself and made the land less valuable thereby.

*Reese*, on same side.

SLIDELL, C. J. In 1809 a sale was made of a tract of land in the parish of Plaquemines to *T. B. Bobertson* and *William Wilson*, who are described in the deed as residents of New Orleans. *Preston* subsequently purchased the undivided moiety of *Robertson*, and sold it in 1847 to the plaintiff, who took possession of the land, then in a state of waste, made ditches, fences and levees, erected cabins, and planted orange trees, all at his own expense, and has also paid the taxes. Meanwhile nothing is known of *Wilson*. Residents of the parish advanced in years, say they never saw or heard of him; his whereabouts, and even existence, for a long time past, remains under the evidence, unknown.

In 1853, *Smith* brought this suit, and obtained an attachment upon affidavit of his belief that *Wilson* resided permanently out of the State of Louisiana. He is represented in this proceeding by a curator *ad hoc*, appointed by the Court. The petitioner alleges that he has made various improvements, paid taxes, &c., at his own expense, to the value of $30,000, that he has increased, by $30,000, the value of the property, and that *Wilson*, as the owner of the other undivided moiety is, therefore, indebted to him in the sum of $15,000, for which he prays judgment, with privilege on the land. The suit was dismissed by the District Judge, and the plaintiff has appealed.

The claim of the plaintiff not only seems unreasonably exaggerated, but is also based upon an obvious misapprehension of his rights. *Smith* and *Wilson* were owners in common of this land. From this relation, and in the absence of any express agreement, the law implied certain mutual rights and duties.] Of these, the most prominent are the right of partition, when either desires it; the right of mutual participation of the fruits and revenues, and the consequent duty to account to each other therefor; the duty of the co-proprietor who is present and in actual possession, to take the same care of the property as if it were wholly his own; the right of incurring expenses necessary for the preservation of the common property, and consequent obligations of reimbursing one another for such outlays. If one of the proprietors make some change in the property in the other's absence, not necessary for its preservation, which occasions the co-proprietor a loss, or which he has just cause not to approve of, the former does so at his own risk and under the obligations of an equitable restoration. It is not, indeed, a partnership, as erroneously characterized by the District Judge, but it is controlled in some respects by analogous rules. See Domat, book II. tit. 5, sec. 2. Merlin Rep. verbo indivis. Civil Code 2777.

The theory of the plaintiff's claim is obviously inconsistent with a just application of the principles which control the relations of proprietors in common. If the expenditures he has made were such as it was lawful for one proprietor to make in the absence and without the knowledge of his co-proprieter, then the liability of the latter is for an equal share of the expense, accompanied with an equal participation in the resulting benefit. But the proposition that *Wilson* is indebted to *Smith* $15,000, because the land, as he alleges, has been increased $30,000 in value, by the improvements, is inadmissible. The

SMITH
*v.*
WILSON.

duty of *Smith* was to prove the cost of lawful expenditures, accounting also for the fruits; the defendant is his debtor or creditor, as the case may be, for the balance, and a joint owner of the improvements lawfully made, with a right to repudiate such as were unnecessary or beyond the scope of *Smith's* authority, implied from their relation as owners in common, and throw the burden on *Smith.*

The unreasonable character of *Smith's* pretensions may be illustrated by entering somewhat into details. For example, he desired the Court below *to* fix upon the absent defendant a liability for one half of the present value of certain orange trees planted by him, a value not due, as the District Judge correctly remarked, to the plaintiff's capital and labor alone, but to the nutriment of the soil, one half of which the defendant owned.

The District Judge was of opinion that the evidence was entirely too general and vague to enable him to state an account between the parties, and in this opinion we fully concur. The vigilance which the District Judge thought proper to exercise for the protection of an absent defendant is creditable to the administration of justice.

In affirming the judgment it has not been necessary to express, and we do not express any opinion upon the question what works or expenditures were necessary, or within the authority of an owner in common, whose co-proprietor is absent. If this litigation should be renewed, it would be well that evidence should be taken upon the comparative advantages of leaving lands so situated exposed to overflow, and improvement by alluvion, or excluding the inundation by levees, and upon other matters pertinent to the subject.

The intervention on the part of the State requires little comment. The petition of intervention is vaguely framed, but seems to suggest an interest on the part of the State, present or prospective, upon the supposition of *Wilson's* death without heirs. There is no evidence that *Wilson* is dead, and the mere lapse of time is still insufficient to raise a presumption of his death..

Judgment affirmed with costs.