No. 3140

Second Circuit

(Second Division)

SOUTHWESTERN GAS & ELECTRIC CO. v. LILES

(April 9, 1931. Opinion and Decree.)
(May 7, 1931. Rehearing Refused.)

Wilkinson, Lewis, Wilkinson & Burford, of Shreveport, attorneys for plaintiff, appellee.

Barksdale, Bullock, Warren, Clark & Van Hook and Foster, Hall & Smith, of Shreveport, attorneys for defendant, appellant.

CULPEPPER, J. Plaintiff, defendant and others, were joint owners of a certain tract of land in Caddo parish, on which is located an oil well. Plaintiff drilled the well and was operating it, producing oil therefrom in 1919, when defendant and others were decreed to be the owners of a one-fifth interest in the property. From that time on until the year 1925, approximately five years, the well was operated by plaintiff at a profit, defendant receiving her pro rata share of the proceeds, less operating expenses. In 1925 the well was operated at a total loss of $6,992.90, due to a considerable expense incurred in an effort to remove a part of the tubing which got into the liner in April of that year. Defendant was charged with her pro rata share of these expenses. She refused to pay same, and this suit followed.

Defendant filed an exception of no cause of action, contending that the allegation in plaintiff's petition disclosed a partnership; that the partnership had not been dissolved; and that, under the law regulating partnerships, neither partner can sue the other individually for a partnership debt so long as the partnership continues to exist; and that the debt sued on is a partnership debt. The court overruled the exception.

Defendant filed an answer of general denial, and the case went to trial upon the merits. There was judgment in favor of plaintiff and defendant appealed.

The petition sets forth a co-ownership by plaintiff and defendant of the property; that by a joint arrangement with defendant, plaintiff had been operating the property for gas and oil whereby the oil run from the property was divided between them, after deducting the expenses, each receiving a share in the net profits proportionate to their respective interests in the property. The evidence seems to bear out these allegations as going to show the manner in which the business was being carried on, and the relationship which existed between the parties, except that it does not show that there was a joint arrangement between them to carry on the business as thus alleged. The only thing defendant ever did was to employ counsel to represent her in recovering her interest in the property, and when that was accomplished in the lawsuit that was had, she soon thereafter began to receive checks through Mr. W. P. Hall, her attorney, who had represented her in the lawsuit, covering her share of the output of the well, after Mr. Hall deducted what was coming to him on his fee. Mr. Hall

testified he received the checks with statements of receipts and disbursements for expenses, and that he would always mail to Mrs. Liles, simply a check for her part, without any explanation as to the contents of the statements he received. That being true, it can hardly be said that a joint arrangement between plaintiff and defendant was ever entered into. Plaintiff was operating the well when defendant became owner of her interest, and the operations continued uninterrupted as they had been. Plaintiff began sending out checks to the newly recorded owners under the changed conditions of ownership resulting from the litigation without attempting to have any agreement with the joint owners as to the mode or manner of operating the well or sharing in profits and losses.

There were substantial profits derived from the well each year from 1919 to 1925. It is true, as counsel contends, plaintiff and defendant were joint owners of the property and shared in the profits and losses. It is true also that a sharing in profits and losses is characteristic of a partnership but it is also true that these are characteristics of a tenancy in common. The relationship which existed between plaintiff and defendant was similar to that where one joint owner of a plantation takes charge, operates it, and at the end of the crop season he deducts for expenses, pays over to his co-owner his share of the profits if there be any, and if the losses exceed the profits, he charges his co-owner with the latter's pro rata part of them.

The one is a business having to do with obtaining products from the surface of the soil while the other is that of obtaining products from underneath it. There are numerous decisions of the courts in this state holding the former business as coming under the rules of co-tenancy. In fact, the system of co-tenancy has its origin in that class of endeavor, that of joint ownership. Planting operations carried on upon lands owned by two or more jointly are sometimes referred to as planting partnerships. They may be under certain relationships which might exist between the co-partners, but these relationships must be as a partnership and not as co-tenants.

A partnership is a separate entity and is distinct from the persons who compose it. It is in that sense in which counsel for defendant would have the court view plaintiff and defendant in this case. In that case there should be a name under which the parties did business. None existed in this case. There must, under the Code, have been a synallagmatic or commutative contract entered into by and between the parties in order to have made it a partnership as contemplated by the law. Such was not the case here.

Article 2805 of the Civil Code provides:

"Partnerships must be created by the consent of the parties."

This means that they must have entered into a mutual agreement, and the result of that agreement be that some concrete entity be created which would be separate and distinct from the parties themselves, such as to make the thing they created entirely separate and distinct from themselves. No such entity was ever created by plaintiff and defendant in this case. Under the above quoted article of the Code is cited City of New Orleans v. Gauthreaux, 32 La. Ann. 1126, wherein the court held that:

"As to third persons, a partnership may be created by construction of law, though not intended nor existing between the parties themselves."

It is on the principle that if parties hold themselves out to the public as partners, third persons have the right to ·regard them and deal with them as such, but even in such cases, the parties remain as separate entities as to their dealings between themselves.

The case of Collom v. Bruning, 49 La. Ann. 1257, 22 So. 744, cited under the above articles of the Code, held:

"The mere fact that two persons may both be interested pecuniarily in the same business venture, and that each gives to it his time and attention does not carry with it as a matter of law, the conclusion, that they stand towards each other as partners."

Also in the case of Chaffraix & Agan v. Lafitte & Company, 30 La. Ann. 631, cited under this same article 2805 of the Civil Code, the court held:

"When the parties do not intend to create a partnership and do not hold themselves out as partners, the mere fact that they divide the profits of a business does not make them partners."

In the case of Smith v. Wilson, 10 La. Ann. 255, plaintiff and defendant were joint owners of a plantation; plaintiff took charge upon his acquiring his undivided interest, while defendant was an absentee and his whereabouts were unknown to plaintiff. Plaintiff incurred upon his own initiative, a very large expense in clearing up the land, building cabins, and securing a large number of hands to work the place. Having failed to make enough to pay expenses by the end of the year, he charged defendant with a part of the loss proportionate to defendant's interest in the plantation; and in an effort to collect same, attached the latter's interest in the property. The court rejected plaintiff's demands as being unreasonable, but in discussing the case, laid down certain principles of law applicable to the facts of the case. The court said:

"If the expenditures made be such as it was lawful for one proprietor to make in the absence and without the knowledge of the other, then the liability of the latter is for an equal share of the expense, accompanied with an equal participation in the resulting benefit. The duty of the co-proprietor who is present and in actual possession is to take the same care of the property as ·if it was wholly his own. Smith and Wilson were owners in common of this land. From this relation, and in the absence of any express agreement, the law implied certain mutual rights and duties. Of these the most prominent are the right of partition when either desires it; the right of mutual participation in the fruits and revenues, and the consequent duty to account to each other therefor; the duty of the co-proprietor who is present and in actual possession to take the same care of the property as if it were wholly his own; the right of incurring expenses necessary for the preservation of the common property, and consequent obligations of reimbursing one another for such outlays. It is not, indeed, a partnership, as erroneously characterized by the District Judge, but it is controlled in some respects by analogous rules."

We think the case at bar is one which should be governed by the same rules laid down in the above cited case. It is not one of partnership, but is a case in which the plaintiff in actual possession of the whole and operating it for the joint benefits of its co-owners, was duty bound to take the same care of it as if it was wholly his own. And in doing this, there existed in plaintiff the right to incur such expenses as were necessary for the preservation of the common property; and there also existed the consequent obligation on the part of defendant of reimbursing plaintiff for her share of such expenses. It will be seen that the court in

the Smith v. Wilson case, cited above, held specifically that no partnership existed between the parties, although it was a case governed by rules analogous. All of the rights and duties therein enumerated are such as are found in the law governing co-tenancy.

We think the testimony in this case clearly shows that the expense incurred in an effort to save the well were, in the honest opinion of plaintiff and its agents, wise and judicially made, in an honest effort to preserve the property. The well was at the time its flow became impeded, producing twenty barrels of oil daily. The amount spent to save it, compared to the value of that amount of oil daily, and the hope of thereby saving the well, should not be considered unreasonable nor excessive. Neither should the continued efforts throughout a period of five months, necessitating a continued and increasing expense, be deemed as unwise, considering the fact that on some wells, according to the testimony, quite a long period of time is required to remove obstacles from them. It seems to be the experience among oil men that sometimes foreign objects can be removed from wells in a few days, and at other times it takes weeks, and even months. It is one of those conditions which arise where the operators have to use their best judgment. It cannot be said in this instance that plaintiff failed to use good judgment under the circumstances, nor that the well was handled otherwise than as if it belonged wholly to it.

Plaintiff owned a considerably greater interest in the well than defendant, hence its part of the expenses was greater, and it is not reasonable to suppose plaintiff would create a heavy expense upon itself unless it had good reason to believe the well could be saved. Had it been saved, it would soon have more than repaid all the expenses incurred.

The custom of plaintiff had been to make disbursements to defendant periodically of the proceeds. No part of the profits had ever been retained and placed to any reserve account. In fact, there was no sort of what might be termed a partnership capital nor a reserve account to which profits were placed, nor against which a loss could be charged. Therefore, we see no reason why at this particular time defendant should not have been called upon to pay her share of the losses sustained during 1925.

We have examined the cases cited by counsel for defendant on the point that one partner, before he can sue his co-partner for some specific sum growing out of a partnership transaction, must sue for liquidation of the partnership affairs. In all of these cases it appears plain that a partnership in fact existed; that it had been previously created by the parties under express contract, either in writing or verbal. Most of the cases involved commercial firms engaged in mercantile pursuits. The principle enunciated by counsel is perfectly good and applies to partnerships. But in the opinion of the court, the case now before the court does not involve that class of cases, but falls within the class of tenants in common. Under this latter class of cases, defendant is liable.

The amount sued for has been proven to be correct. In fact, the amount does not seem to have been seriously disputed. It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.