HENDERSON'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 11532.

Circuit Court of Appeals, Fifth Circuit.

May 8, 1946.

See, also, 147 F.2d 619.

C. J. Batter, of Washington, D. C., and John L. Toler, of New Orleans, La., for petitioners.

Maryhelen Wigle and Robert N. Anderson, Sp. Assts. to the Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

Hunt Henderson died testate on June 21, 1939. His wife survived him. The spouses were life-long residents of Louisiana. Petitioners are the executors and executrix under his will. The estate was composed in part of community property, and there were community debts outstanding.

The first question is whether one-half of the income from the community property for that part of the calendar year falling after decedent's death was taxable to the widow by reason of her marital rights or whether, as the Tax Court held, the entire community income was taxable to the decedent's estate pursuant to Section 161(a) (3) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 161(a) (3). This section provides that income received by a decedent's estate during the course of the administration shall be taxed to the estate and paid by the fiduciary. The Government contends that this applies to the income from all of the assets of the former community and that it should be reported as an entirety. The petitioners maintain that the widow individually was entitled to have taxed to her, in a separate return, one-half of the income arising in the pertinent period from property of the previously existing community.

In Louisiana the wife has a present vested interest in community property equal to that of her husband. It vests in her by virtue of the marriage, which superinduces as a matter of right a partnership or community of acquets or gains.[1] The Government admits this as a postulate, but denies, as a conclusion therefrom, that the income from the widow's com-

[1] Bender v. Pfaff, 282 U.S. 127, 51 S. Ct. 64, 75 L.Ed. 252; Fernandez v. Wiener, 66 S.Ct. 178; Dickson v. Dickson, 36 La.Ann. 453, 7 So. 624; Tugwell v. Tugwell, 32 La.Ann. 848; Succession of Dumestre, 42 La.Ann. 411; Phillips v. Phillips, 160 La. 813, 107 So. 854; Succession of Wiener, 203 La. 649, 14 So. 2d 475.

munity interest cannot properly be taxed to the estate of the decedent if there are community debts. Since all of the community assets are within the control of the Succession and liable for community debts, the Government contends that, pending settlement of the estate, the wife's one-half interest is contingent and residuary because it remains liable for the community debts and may be sold by the executors to pay them.

■ There is no use in comparing or distinguishing decisions dealing with the statutory laws of other community-property states; both the Supreme Courts of Louisiana and of the United States have dealt explicitly with the character of the wife's community interest in Louisiana. Both courts have held that her one-half interest is not a mere expectancy during the marriage but vests in her upon the acquisition of the property. They have compared her interest to that of a partner in the property of a partnership, the affairs of which have been entrusted to a managing partner. Upon the death of the husband her title is enhanced, not diminished. By death the husband loses a power over property that he never owned, and the widow gains new powers over property that was already hers. This shift of power is substantial enough to be a rational basis for the levy of a federal estate tax.[2]

■ The executors in this case are the personal representatives of the decedent; they stand in his shoes with diminished powers and prescribed duties. They are trustees who hold the legal property but not the equitable. They are not the personal representatives of the widow, though they are liquidators of her interests and owe her the duty that trustees owe to a cestui que trust. The wife's interest under the community regime was already inside of the husband's succession at the time of his death,[3] but costs connected with the husband's succession and his funeral expenses are not chargeable to the surviving spouse.[4] The latter may dispose of her part of the community property subject to community debts and charges.[5]

Since the executors hold in trust the widow's half of the community property, and are collecting the income from it, they might be required to file a separate income-tax return and pay the tax for her pursuant to said Section 161; but the point is not before us, as the widow has filed her individual return and paid the tax. The question here is as to the character of the executors' title during the period of administration and their alleged duty to file a single return for the entire community. In whom is the real ownership of the widow's share, especially where the possibility of its invasion to pay debts is so remote as to be practically nonexistent? Does the indefeasible title of the widow pass into an eclipse pending settlement of the husband's succession? Do the personal representatives of the husband have a better title than he himself had? Does the authority of agents exceed that of their principal?

■ The answer is clear; the stream cannot rise higher than its source, and the husband is the source of the community title, powers, and possession, held and exercised by petitioners. They derived none of these from the wife except through the husband. No one is heir to or executor for the living.[6] Undue significance has been given to the process of administration. While the decedent's estate was being administered, the widow's half of the community property was held by the executors as agents or trustees. That it might be sold in the manner provided by law to pay community debts was the only contingency attached to her otherwise indefeasible title. In this limited sense only was it contingent or residuary. As said by the Supreme Court of Louisiana: "The surviving spouse receives the property just as any

[2] Fernandez v. Wiener, 66 S.Ct. 178.
[3] Succession of Bertrand, 123 La. 784, 49 So. 524.
[4] Vaccaro v. United States, D.C., 55 F. Supp. 932; Succession of Pizzati, 141 La. 645, 75 So. 498; Succession of Lewis, 192 La. 734, 743, 189 So. 118, 121; Womack v. McCook Brothers Funeral Home, 194 La. 296, 193 So. 652.
[5] Webre v. Lorio, 42 La.Ann. 178, 7 So. 460; Vigo v. Morrill, 2 Orl.App., La., 75.
[6] Nemo est haeris viventis.

other proprietor receives title burdened with debts."[7]

The next question involves the construction of a state statute and the legal effect of a written agreement. At the time of his death the decedent was a member of a partnership, entitled William Henderson. One of the community assets was an interest in this partnership, the articles of which provided that the firm should continue for one year after the death of any partner. The partnership made its return under the accrual system of accounting, the decedent under the cash system; both were on the calendar-year basis. The question is whether the income from said partnership is taxable for the period extending from the date of decedent's death to the end of the year 1939, or on the income for the entire calendar year, a lesser sum.

The Tax Court held that the partnership terminated with death and a new partnership came into being; that the articles were equivalent to an agreement that the business of the partnership should be carried on for one year after the death of any partner. This interpretation does violence to the words used by the parties within the purview of the statute. Article 2880 of the Louisiana Civil Code provides that: "Every partnership ends of right by the death of one of the partners, unless an agreement has been made to the contrary." The implication is irresistible that the partnership does not end of right by death if an agreement has been made to the contrary.

By the articles of partnership[8] a new firm was formed to consist[9] of three individuals, and the firm (not necessarily the partnership business) was to continue for one year after the death of any partner. Since the firm continued as stipulated,[10] no tax year ended for the partnership with the death of the decedent; and there was no partnership gain or loss to report for the period immediately preceding death. The partnership income for 1939 should have been reported in its entirety.

The Government contends that a partnership, even by agreement, cannot be the same firm as it was before one of the partners died "unless the firm operates with a dead man as a partner." We think it can, in legal contemplation, if the statute authorizes it. Since a corporation may be given continuity of existence that is unaffected by death, we see no reason why the State of Louisiana may not provide that a partnership does not end of right by the death of one of the partners. That the same firm continues is a legal fiction, but

---

[7] Webre v. Lorio, 42 La.Ann. 178, 7 So. 460, 461.

[8] "New Orleans, Louisiana, December 31, 1934.

"We, the undersigned, agree to form a partnership to begin operations January 1, 1935, under the style of 'Wm. Henderson' to carry on the business of sugar refining carried on by the previous firm of Wm. Henderson, which expires at Midnight on December 31, 1934. The new firm is to consist of Hunt Henderson with two-thirds (⅔rds) interest and Christian J. Gambel and Frederick A. Gambel, each with one-sixth (⅙th) interest, and is to continue for one (1) year after the death of any partner.

"Signed in triplicate originals at New Orleans, Louisiana, this 31st day of December, 1934.

(Signed)     Hunt Henderson,
(Signed)     Christian J. Gambel,
(Signed)     Frederick A. Gambel."

[9] "Consist: To be composed or made up;—followed by of. The verb consist is employed chiefly for two purposes, which are marked and distinguished by the preposition used. When we wish to indicate the parts which unite to compose a thing, we use of; as when we say, 'Macaulay's Miscellanies consist chiefly of articles which were first published in the Edinburg Review.' When we wish to indicate the true nature of a thing, or that on which it depends, we use in; as, 'There are some artists whose skill consists in a certain manner which they have affected.' 'Our safety consists in a strict adherence to duty.'" Webster's International Dictionary.

[10] Upon petition to the Civil District Court of the Parish of Orleans, the continuance of the William Henderson Partnership for one year was ordered in accordance with the partnership agreement. While this did no harm, it probably did no good except to give the court's approval to the conduct of the executors as ex officio liquidators of the community. This order was under date of June 19, 1940.

314

such a thing is not new in the history of our jurisprudence. A federal court should not look askance at legal fictions under state laws so long as it maintains the fiction that a corporation is a citizen of the state of its incorporation.[11]

■ There is a distinction in the law of Louisiana between an ordinary commercial partnership and the partnership of acquets or gains superinduced by marriage. While the two are similar in many respects, one difference is that a commercial partnership is a fictitious person. It is a civil person possessing its peculiar rights and attributes. In contemplation of law it is a separate legal entity, distinct from the individuals composing it, capable of suing and being sued in the partnership name. This is not true of the marital-community partnership. The law of Louisiana with reference to commercial partnerships is stated by the Supreme Court of that state in Succession of Pilcher, 39 La.Ann. 362, 1 So. 929, 932, as follows: "In Smith v. McMicken, 3 La. Ann. [319], 322, the court said: 'The partnership, once formed and put into action, becomes, in contemplation of law, a moral being, distinct from the persons who compose it. It is a civil person which has its peculiar rights and attributes. * * * Hence, therefore, the partners are not the owners of the partnership property. The ideal being, thus recognized by a fiction of law, is the owner; it has the right to control and administer the property to enable it to fulfill its legal duties and obligations; and the respective parties who associated themselves for the purpose of participating in the profits which may accrue, are not owners of the property itself, but of the residuum which may be left from the entire partnership property, after the obligations of the partnership are discharged.' City of New Orleans v. Gauthreaux, 32 La.Ann. [1126], 1128."[12]

■ The remaining questions relate principally to deductions disallowed petitioners for money paid to the widow.

During the period beginning June 30, 1939, and ending November 30, 1939, various payments, aggregating $16,615.06, were made to the widow by the partnership. They were first charged to her account on the books of the firm; later, probably after the close of the calendar year, the total amount was credited to her and charged to the Hunt Henderson Succession as of December 31, 1939. As of the same date and evidently at the same time, said Succession was credited with $55,884.92 as its part of the partnership profits. It is apparent that by these entries the estate received out of profits exactly $16,615.06 less than it otherwise would have done. Therefore, since they were charged with it, petitioners were entitled to the deduction of this amount both from a legal and equitable standpoint. It would probably be more accurate to say that the estate really never received this money and should have reported only $40,969.86, but since the contemporaneous entries were recognized as cash by all parties, the transaction may be regarded just as if the petitioners had received the full amount and had handed back to the partnership out of profits 16,-615.06 in payment of the widow's debt, which was the same as a payment to her, and was ratified by her by reporting it in her income-tax return for that year.

Following the above entries on the journal was another entry; it charged the Succession with $55,942.42, and credited that sum to an account styled "Succession Hunt Henderson Income." All of these entries were on the books of the partnership, a distinct legal entity, not on the books of petitioners. The latter entry undertook to credit the Hunt Henderson Succession with the entire profits of the community, and disregarded the widow's separate and distinct interest therein. It is ineffective to prevent petitioners from showing that, contemporaneously with the profits-credit, they had been debited with $16,615.06 for cash advanced to the widow in the current year, which actually re-

[11] A Supreme Court Fiction, by Dudley O. McGovney, 56 Harvard Law Review, 853, 1090, 1225.

[12] See also Raymond v. Palmer, 41 La. Ann. 425, 6 So. 692, 17 Am.St.Rep. 398; Sherwood v. His Creditors, 42 La.Ann. 103, 7 So. 79; Darden v. Garrett, 130 La. 998, 58 So. 857; Southwestern Gas & Electric Co. v. Liles, 16 La.App. 500, 133 So. 835.

duced by that much the total partnership profits received by them for the year 1939. Moreover, the entry was not in accordance with law, so far as petitioners are concerned, because the widow was entitled to a separate accounting from them as to her share of the community income. In computing the entire partnership profits for 1939, on a calendar-year basis, the petitioners should reconcile their accounting to the widow so as to show the sum of $16,615.06 paid for her out of adjusted community profits.

■ The two payments by petitioners to the widow in December, 1939, totalling $2,068.39, stand on a different footing. Deductions therefor were denied by the Tax Court for want of proof that they were paid out of income, and we affirm its decision on the record before us, but without prejudice to the right of either party to introduce further evidence on the subject, since this case is to be remanded on other grounds. Upon another hearing, if it should appear that these payments were from income on the widow's one-half interest or that no other source was available, the deductions may be allowed, We also approve the findings below with reference to certain dividends collected by banks, except that only one-half of such amounts as were from community property should be credited to the estate; the other half should be credited to the widow or to the petitioners as trustees for her.

■ As agents of the widow, or trustees of her one-half of the community property, the petitioners should keep a separate account of their collections and disbursements in her behalf. Their fiduciary relation to her is distinct from their relation to the estate. Her income should not be commingled with the funds of the estate except when necessary to pay community debts. Even then it must be accounted for separately. Distinctly different fiduciary functions require separate accountings. There is a fundamental difference between the executors of a de-

ceased husband's estate and the same individuals in the capacity of liquidators of the wife's one-half interest in the community property.[13] So far as the duty to account is concerned, it is as if different persons had been appointed to each office.[14]

The decision of the Tax Court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

---

[13] In re First National Bank & Trust Co. of Waynesburg, 328 Pa. 289, 195 A. 85, 86; Wylie v. Bushnell, 277 Ill. 484, 115 N.E. 618; Perry on Trusts, 7th Ed., Sec. 281, p. 499.

[14] Garrett v. First Nat. Bank, 5 Cir., 153 F.2d 289; Perry on Trusts, 7th Ed., Sec. 281, p. 499.