### GIRARD TRUST CO. et al. v. UNITED STATES.

### No. 10130.

United States Court of Appeals Third Circuit.

Argued April 4, 1950.

Decided June 7, 1950.

George Craven, Philadelphia, Pa. (Kenneth W. Gemmill, Philadelphia, Pa., on the brief), for appellants.

Philip R. Miller, Sp. Asst. to Atty. Gen., Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Alexander F. Prescott, Sp. Asst. to Atty. Gen., Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This controversy concerns the income tax status of the distributive share of a deceased partner in partnership profits. We are asked to decide whether, in the circumstances of this case, this distributive share must be included in the final period income tax return for the deceased partner or whether it may be included in a subsequent return of the decedent's estate.

At the time of his death, Samuel P. Kenworthy was a member of a partnership, composed of himself and three others, engaged in the business of importing and selling wool. The partnership had operated for several years under a written agreement, which provided that the firm should continue until dissolved by mutual

consent on June 30 of any following year. It also provided that the death or withdrawal of any of the partners should not prevent or interfere with the continuance of the partnership business by the remaining partners, or necessitate its winding up, but rather that the interest of any deceased partner in the business should continue subject to all the risks of the operation of the business, and that the proportionate share of the deceased partner in the profits or losses would only be determined as of the following June 30.

Kenworthy filed his income tax returns on a cash and calendar year basis. He died November 15, 1942. A return filed for him after his death covered the final period from January 1, 1942 to November 15, 1942.

The partnership kept its books and filed its income tax returns on an accrual basis and on the basis of a fiscal year ending June 30. The record contains no showing or suggestion that a partnership return was filed for the period ending with the death of Samuel Kenworthy. However, as of June 30, 1943 the firm filed a return reflecting partnership income for the entire fiscal year and showing the distributive shares of the decedent and the surviving partners for that period. Consistent with that return, and in accordance with the terms of the partnership agreement, the firm paid the executors of the deceased partner a sum representing his proportionate share of profits for the entire partnership fiscal year. The partnership was formally dissolved June 30, 1943.

The executors have consented to the inclusion of the share of partnership profits thus received by them in their own income tax return as income taxable to the estate.[1] Earlier, however, upon the death of Samuel Kenworthy his executors had requested the firm to determine the decedent's proportionate share of the profits earned during the period July 1, 1942 to November 15, 1942. This was done and the sum so determined was reported as last period income in the final return of the decedent. Now the executors contend that this inclusion was erroneous and claim a refund for the decedent measured by the reduction of his last period tax which would result from excluding from gross income these undistributed partnership profits earned from July 1 to November 15, 1942.

The Commissioner of Internal Revenue rejected this claim.[2] Thereupon the executors filed the present suit for a refund of tax. The government filed a counterclaim for additional tax based on its computation of last period partnership earnings. The case was disposed of on motion and cross-motion for summary judgment. The District Court denied the refund and allowed the additional tax.

The executors found their position upon the provisions of Sections 188 and 126(a)(1) of the Internal Revenue Code, 26 U.S. C.A. §§ 188, 126(a)(1). Section 188 reads as follows:

"§ 188. Different taxable years of partner and partnership

"If the taxable year of a partner is different from that of the partnership, the

---

1. § 126 of the Code provides that gross income in respect of a decedent which is not properly includible in respect of his last taxable period shall be included in the gross income of the estate when received if the estate has acquired the right to receive it from the decedent. By its terms, the section is not applicable to decedents whose deaths occurred within a taxable year beginning before January 1, 1943 unless the fiduciary representing the estate files a consent to the taxation of such income to the estate. Int.Rev.Code, § 126(a), 26 U.S.C.A. § 126(a). Revenue Act 1942, § 134(f, g), 56 Stat. 832, 26 U.S.C.A. § 126 note.

2. Actually, the taxpayers filed two different claims for refund. The first was based on their claim that § 126 of the Code required the taxation to the estate of any sums in respect of a decedent which became payable solely by reason of his death. This was rejected on April 26, 1946. The second claim for refund was based on their claim spelled out more fully in the body of this opinion. This claim was also rejected. It will be necessary for us to dispose of the issues only on the second claim.

inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner."

The executors contend that the income in question was partnership income for a taxable year of the partnership which ended June 30, 1943 at a time not within the final taxable year of the decedent which ended with his death on November 15, 1942. The government claims that a partnership taxable year ended when a partner died. Decision on this issue is conclusive of the controversy on appeal. If the executors are correct in their contention that a partnership taxable year did not end until June 30, 1943, then the income in question is covered by the language of Section 126(a)(1) which requires that an executor include in the gross income of the estate of a decedent for the taxable year when received "income in respect of a decedent * * * not properly includible in respect of the taxable period in which falls the date of his death", where "the right to receive the amount is acquired by the decedent's estate from the decedent".

We think the contention of the executors is correct. We hold that under the circumstances of this case a taxable year of the partnership did not end with the death of partner Samuel Kenworthy.

The proprietors of the partnership business did all within their power to make the twelve-month period ending June 30, 1943 a partnership taxable year. The relevant parts of the articles of association have already been outlined. The document makes clear the purpose and undertaking of the partners that in the event of the death of one of them neither accounting, nor determination of distributive shares, nor winding up of the business should occur sooner than the end of the normal partnership fiscal year. Consistent with this agreement there was in fact an annual partnership accounting as of June 30 for each fiscal year including the year ending June 30, 1943. Partnership income tax returns were filed for each such year including the year ending June 30, 1943. No partnership return was filed for a period ending with the death of Samuel Kenworthy. A so-called "accounting" upon the death of Kenworthy is revealed in the record to have been no more than a response to a request of the executors of the deceased that the accountants of the firm determine what his distributive share would have been had the books been closed on November 15, 1942. In brief, as an agreed procedure and as a business reality the normal partnership accounting period and taxable year ending June 30, 1943 was not affected by the death of Samuel Kenworthy.

In opposition, the Commissioner relies upon the doctrine that a partnership is merely an aggregation of individuals dissolved when one of them dies. He reasons that the death of a partner necessarily changes the proprietorship and on that basis concludes that a partnership accounting period and taxable year must end at that time. He denies the power of the partners by agreement and action consistent therewith to prevent such termination of a partnership taxable year.

Generally, the annual accounting period called the taxable year of a partnership is fixed by the partners to accord with business convenience. It is not disputed that the income tax laws sanction this. The income tax laws nowhere say that this normal partnership taxable year must be cut off when a partner dies. To the contrary, we think they give inferential sanction to its continuation in such circumstances as this case presents.

In the plan of the income tax laws Congress has found it desirable and proper to accomplish an administrative and procedural segregation of a partnership as a business unit from its several members.[3]

---

3. However, this administrative and procedural segregation cannot properly be

used as a basis for an argument that a partner did not receive income even at

The business unit is accorded a taxable year ·of its own distinct from the taxable years of its members. It is required to return its income on the basis of its taxable year and to list distributive shares of profits or losses in terms of that year. Despite a general requirement that an individual report his income as earned during the period of his taxable year, he is required to report his income from a partnership for a period of earning which need not coincide with his taxable year. It suffices that he make return for any partnership accounting period ending within his taxable year. In sum, for purposes of administering the income tax laws a partner is treated as earning partnership income, not as it comes into the partnership till from day to day, but rather as a periodic partnership accounting may reveal partnership profit or loss and individual shares thereof. There is nothing in the income tax laws which suggests that this statutory scheme must be abandoned when its result is to cause partnership income to be treated as though it accrued to the estate of a decedent rather than to the decedent himself. It appears to us that Congress sought to cause income from partnership business to be reflected in individual returns according to a fair and convenient plan geared to the normal mechanics and accounting practices of partnership business despite any resultant inconsistency with the aggregate theory of partnership. "In requiring a partnership informational return although only individual partners pay any tax, Congress recognized the partnership both as a business unit and as an association of individuals." See Neuberger v. Commissioner of Internal Revenue, 1940, 311 U.S. 83, 88, 61 S.Ct. 97, 101, 85 L.Ed. 58.

■ If there is no agreement for continuation upon the death of a partner, and if distributive shares are determined and allotted as of that date, the partnership has established an abbreviated accounting period and taxable year conterminous with

the life of the deceased partner. But if the business reality is different the procedure can still be consistent with the administrative scheme outlined and sanctioned by Congress. Here the partnership agreement, the conduct of the business after the death of Kenworthy, and the normal accounting at the end of the established partnership fiscal year accord with the statutory plan of distinguishing the partnership from the several partners for income tax accounting and reporting purposes. The translation of partnership earnings into individual income is deferred until the end of the partnership fiscal year. We can not find in the statutory plan which set up such a procedure any implication that this basic plan must be modified and the partnership taxable year abbreviated whenever a partner dies.

Our analysis and conclusion are supported by decisions to the same effect in like cases. Henderson's Estate v. Commissioner, 5 Cir., 1946, 155 F.2d 310, 164 A.L.R. 1030; Mnookin's Estate v. Commissioner, 1949, 12 T.C. 744; cf. United States v. Wood, 3 Cir., 1935, 79 F.2d 286, certiorari denied 1935, 296 U.S. 643, 56 S.Ct. 249, 80 L.Ed. 457; O'Daniel's Estate v. Commissioner, 2 Cir., 1949, 173 F.2d 966; cf. Note, 5 Tax L.Rev. 568 (1950).

It is urged that Guaranty Trust Co. of New York v. Commissioner of Internal Revenue, 1938, 303 U.S. 493, 58 S.Ct. 673, 82 L.Ed. 975, looks the other way. But there a partnership accounting and distribution of partnership profits did occur upon the death of a partner. Indeed the Court noted that the ending of a taxable year of the partnership with the death of a partner had been conceded. We are the more strongly inclined to avoid unnecessary extension of the doctrine of that case because of the observation of Chief Justice Stone in the course of the opinion that unless the deceased partner was taxed in his final return for the partnership income in question it would not be taxed at all. See Rabkin and Johnson, The Partnership

the end of the partnership tax year. Cf. Randolph Products Co. v. Manning, 3 Cir., 1949, 176 F.2d 190; First Mechan-

ics Bank of Trenton v. Commissioner of Internal Revenue, 3 Cir., 1937, 91 F.2d 275.

Under the Federal Tax Laws, 55 Harv.L. Rev. 909, 935 (1942). Since that time, Congress has provided the procedure, followed by the executors here, for the taxation of a decedent's estate where items not includible in a final return are subsequently received. Int.Rev.Code, § 126(a)(1). Therefore, no such escape from taxation as concerned the Court in the Guaranty Trust case is involved in this case.

From a different approach, consistent application of the theory urged by the government would lead to a result which has not been suggested but seems both inescapable and undesirably harsh. If a taxable year of the partnership ends with the death of a partner, not only the deceased but the surviving partners as well must include partnership income for this fractional period, in addition to partnership income for a preceding twelve months, in their returns for the year within which a partner has died. Thus, the survivors would be burdened with the tax consequences of fortuitous bunching of income. This very problem has been considered by the Tax Court in Walsh v. Commissioner, 1946, 7 T.C. 205. It was there held that the death of a partner does not compel the firm and the survivors to recognize a "short partnership taxable year" or to report income on such a basis. Cf. Ford v. Commissioner, 1946, 6 T.C. 499. We think this conclusion was correct and that the position of the Commissioner in the instant case cannot be squared with it.

Finally, we have not overlooked the argument stressed by the government that partners earn income as it comes into the partnership business. That is beside the point. "Circumstances wholly fortuitous may determine the year in which income, whenever earned, is taxable." See Guaranty Trust Co. of New York v. Commissioner, supra, 303 U.S. at page 498, 58 S. Ct. at page 676, 82 L.Ed. 975. Congress has not seen fit to tax partnership income as earned but rather as if each partner's earning occurred periodically at the end of each taxable year of the partnership. If Samuel Kenworthy had not died in November but had survived until sometime early in the following year, his income tax return for the calendar year 1942 would not have included partnership profits for the second half of that calendar year yet such profits would have been his 1942 earnings no less than they are in present circumstances.

The judgment of the District Court on the principal claim and counterclaim will be reversed, and the cause remanded with directions to enter judgment for the plaintiffs in accordance with this opinion.