**HIBERNIA NAT. BANK IN NEW ORLEANS**

v.

**DONNELLY, Collector of Internal Revenue.**

**Civ. No. 2422.**

United States District Court
E. D. Louisiana, New Orleans Division.
March 19, 1954.

Judgment Affirmed July 16, 1954.
See 214 F.2d 487.

Bloch, McCloskey & Dennery and Joseph McCloskey, New Orleans, La., for plaintiff.

John N. McKay, U. S. Atty., Lansing L. Mitchell, G. Harrison Scott, Asst. U. S. Attys., for defendant.

CHRISTENBERRY, Chief Judge.

This is a suit by the Hibernia National Bank, as Executor of the Succession of Bernard McCloskey, against Charles A. Donnelly, Collector of Internal Revenue in New Orleans, Louisiana, during the taxable years involved, for the refund of Twenty-Seven Thousand, Ninety-Nine and 10/100 ($27,099.10) Dollars, or such other sums as may be found to be properly due and payable. The amount claimed is the total sum allegedly overpaid defendant Collector in income taxes by plaintiff for the period May 23 through December 31, 1942, and for the calendar years 1943, 1944 and 1945. The complaint also seeks interest on the sum claimed, and costs.

The case was submitted to the Court upon a stipulation of facts and certain exhibits therein referred to.

The Court being fully informed in the premises, after due deliberation makes the following findings of fact and conclusions of law:

### Findings of Fact

#### I.

Bernard McCloskey died a resident of Orleans Parish, State of Louisiana, on May 22, 1942, leaving a last will and testament dated May 1, 1941, naming the plaintiffs herein as Executors. The will was admitted to probate in the Civil District Court for the Parish of Orleans, and Letters of Executorship issued to complainant on June 2, 1952.

Under the decedent's will, certain shares of stock in two corporations were bequeathed in specified amounts to eleven particular legatees.

## II.

On June 11, 1942, one of these corporations declared a dividend payable July 1, 1942, to stockholders of record June 19, 1942. On June 15, 1942, one of the particular legatees named in the will of the deceased wrote a letter to complainant, in its capacity as Executor of his succession, making demand for the legacy bequeathed him, including any and all revenues arising therefrom, as well as interest thereon, in accordance with Louisiana Statutes Annotated–Civil Code Article 1626. This demand was likewise made on behalf of three other particular legatees by the individual legatee by whom the letter was written, who expressed it as his belief that the demand should be extended to other legatees similarly situated, if they so desired.

The letter of demand specifically required that all the revenues, "including any and all dividends derived from the stocks bequeathed to the particular legatees aforesaid, including the undersigned, be specifically set aside * *."

## III.

Between June 15, 1942, and June 30, 1942, the other particular legatees named in the will of Bernard McCloskey also wrote similar letters of demand for delivery of their legacies. It appears, however, that complainant at this time is unable to find the letter of demand which it believes it received from Harry B. McCloskey.

## IV.

Upon receipt of the dividend payable July 1, 1942, by the aforesaid corporation, complainant segregated the amount thereof, to-wit: $1.50 per share on the total of 1900 shares of this corporation's stock bequeathed to particular legatees, and deposited same in a special account opened by complainant in the Hibernia National Bank of New Orleans, Trust Department, in the name of "The Hibernia National Bank in New Orleans, Executor, Estate of Bernard McCloskey, Special Account".

Complainant likewise segregated the dividends on this stock paid October 1, 1942, and the dividends received in 1942 on the stock of the other corporation bequeathed as a particular legacy.

The dividends received on shares of stock bequeathed the particular legatees prior to May 5, 1943, were also segregated and deposited in said Special Account by complainant.

## V.

On May 5, 1943, complainant filed its First Provisional Account in the succession proceedings of the deceased, in which it proposed to deliver to each of the particular legatees the number of shares of stock bequeathed to each said legatee. In this account the dividends on the shares of stock bequeathed to the particular legatees, which had been segregated in the aforesaid "Special Account" by complainant, were not included as income to the estate, nor did the account provide for the payment to complainant of any commission as Executor on the amount of said dividends.

## VI.

The approval of complainant's First Provisional Account and the delivery of the stock therein proposed was opposed by certain claimants alleging themselves to be creditors of the deceased Bernard McCloskey, in amounts in excess of the total value of the estate.

These oppositions were reiterated in June, 1944, when complainant's Second Provisional Account was filed.

This account, and all other accounts of administration filed by complainant in the succession proceedings of the deceased in the Civil District Court for the Parish of Orleans, State of Louisiana, also did not include the dividends on the shares of stock bequeathed to the particular legatees which had been segregated in the Special Account as income to the estate, nor did they provide for the payment to complainant of an Executor's commission on the amount of said dividends.

## VII.

The claims of the alleged creditors above mentioned, which were asserted in five separate suits filed against the complainant as Executor of the deceased and others, were all finally compromised and settled on June 25, 1946. Until then, except as set out hereinafter with respect to the dividends on the number of shares of stock bequeathed to one particular legatee, complainant continued to accumulate and hold in the aforementioned Special Account all dividends paid on the total number of shares bequeathed the particular legatees.

## VIII.

Following the close of the years 1942, 1943 and 1944, complainant wrote letters to each of the particular legatees, with the exception of the one mentioned hereinabove, advising of the amount of dividends accumulated and set aside in the Special Account for each particular legatee during the preceding year, to be reported by each legatee in their individual income tax returns. At the time the case was submitted, complainant was unable to find a copy of the letter which it believed it wrote after the close of the year 1945.

## IX.

Complainant did not accumulate the dividends on the shares of stock bequeathed to one of the particular legatees, inasmuch as this legatee, on a petition filed in the succession proceedings of the decedent, alleging that, upon complying with Articles 1012 and 1671 of the Louisiana Statutes Annotated–Civil Code, he was entitled to the delivery of his stock and cash legacy, and to the dividends on the stock theretofore paid, this legatee obtained an order from the Court in the said succession proceedings directing that a certificate for the number of shares of stock bequeathed him be delivered to him, in his own name, together with the accrued dividends thereon, and the cash legacy made him.

In the said petition this legatee alleged that he was willing to permit the certificate for the shares of stock to be issued in his name to be deposited in the Registry of the Court in order to reduce the amount of the bond he would otherwise have been required to furnish, under the articles of the Louisiana Civil Code alleged upon, and the order of Court providing for the delivery of the stock to him was conditioned upon his so depositing said certificate, duly endorsed in blank, and upon his further furnishing a cash surety bond.

## X.

The obligation for the performance of which said bond was conditioned was that the particular legatee involved would return the legacies and dividends directed by the Court to be delivered to him, if said legacies, or any part thereof, should at any time be necessary to discharge any liability arising from the unliquidated claims upon which the oppositions to complainant's first and second Provisional Accounts were founded, and which complainant, as Executor, should not have other assets to pay.

Subsequent to the date of this order, all dividends thereafter paid on the number of shares bequeathed this legatee were paid directly to him by the corporation involved.

## XI.

On similar petitions and by posting similar bonds, one of the residuary legatees of this succession also obtained cash advances against his residuary interest in the succession in the total amount of $6,100.

No other legatees, particular or residuary, made application for or received any cash distributions from the Executor prior to 1946.

## XII.

In the original fiduciary income tax return filed by complainant as Executor of the succession of the deceased for the period May 22, 1942, through December 31, 1942, the total amount of dividends accumulated was reported. In an amended return for the same period the

total amount of dividends accumulated in the Special Account was deducted.

## XIII.

For the subsequent years 1943, 1944 and 1945 the total amount of dividends accumulated in the Special Account was deducted from the total income reported. In December, 1945, the Treasury Department notified complainant that the deductions for the amount of the dividends for the period May 23 to December 31, 1942, and for the calendar year 1943, had been disallowed, as they did not meet requirements to be within the meaning of allowable deductions under Section 162 of the Internal Revenue Code, 26 U.S.C.A. § 162.

## XIV.

In July, 1947, complainant was further advised that the deductions for the amount of the dividends credited to particular legatees taken on the United States Income Tax Returns filed by complainant on behalf of the estate of the decedent for the calendar years 1944 and 1945, had also been disallowed on the ground that the amounts in question had been "reserved" by the Executor, but that no liability for payment could arise from such a transaction.

## XV.

Subsequently, on February 9, 1948, complainant paid defendant, Charles A. Donnelly, Collector of Internal Revenue for the State of Louisiana, the sum of $31,910.87, representing the total amount of deficiency in income tax asserted to be due by the estate of the decedent for the period May 31st through December 31st, 1942, and for the calendar years 1943, 1944 and 1945, which said amount included interest due thereon to date of payment.

## XVI.

On or about the 4th day of August, 1948, complainant, within the time required by law, filed with the defendant collector claims for refund for the following periods and for the following amounts:

| Period | Amount |
| --- | --- |
| May 31, 1942— | |
| December 31, 1942 | $4,893.24 and int. |
| Calendar year 1943 | 7,493.46 and int. |
| Calendar year 1944 | 8,073.19 and int. |
| Calendar year 1945 | 6,639.21 and int. |
| Total | $27,099.10 and int. |

Copies of these claims were attached to the complaint and made part thereof.

At the time of the filing of this complaint no formal rejections of said claims for refund had been made by the Commissioner of Internal Revenue, and more than six months had elapsed since the filing of the claims and prior to the institution of this action.

## XVII.

Each of the particular legatees included the amount of the dividends paid on the shares bequeathed said legatee in the original or amended United States Income Tax Returns of said legatee, for each of the calendar years 1942, 1943, 1944 and 1945, and paid the additional tax occasioned thereby.

## XVIII.

In the main, it is complainant's position that the inclusion of these dividends as income to the estate was unjustified since they consisted either of:

1. Dividend income of particular legatees not taxable to the estate; or

2. The total of funds received by the Executor of the Estate as Agent or Trustee for particular legatees; or

3. The total of funds received by said Executor as Trustee for said Legatees or for creditors and held in escrow by said Executor pending a determination of the parties properly entitled thereto; or

4. Amounts for which deduction was allowable under Section 162 of the Internal Revenue Code.

## XIX.

Defendant's position with respect to these dividends, as previously noted, is

that the deductions taken by complainant for the amount thereof, in its returns for the period May 23 through December 31, 1942, and for the calendar year 1943, did not meet requirements to be within the meaning of allowable deductions under Section 162 of the Internal Revenue Code.

### XX.

With respect to the taxable years 1944 and 1945, defendant's position, as set out hereinabove, is that these deductions were not allowable because the amounts in question had only been "reserved" by complainant and that no liability for payment could arise from such a transaction.

### Conclusions of Law.

### I.

This Court has jurisdiction of the parties and of the subject-matter.

### II.

The provisions of the Internal Revenue Code in effect during the taxable years in question which are most particularly involved in this controversy are the following:

"§ *161(a)*. The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

\* \* \* \* \* \*

"(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

"(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; \* \* \*.

"§ *162*. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \*

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, 'income which is to be distributed currently' includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;

"(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estates, \* \* \* there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary; \* \* \*."

The regulations applicable to the above quoted Sections of the Internal Revenue Code during the years in question were as follows:

"Reg. 111, Sec. 29.162–1 \* \* \* From the gross income of the estate or trust there are also deductible \* \* \* the following: \* \* \*

"(b) Any income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to a legatee, heir, or beneficiary, whether or not such income

is actually distributed. For this purpose, it is provided in Section 162(b) that 'income which is to be distributed currently' includes income of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary.

"(c) Any income of the estate of a deceased person for its taxable year which is properly paid or credited during such year to a legatee or heir.

"*Reg. 111, Sec. 29.162–2.* * * * Allocation of estate and trust income to legatees and beneficiaries.

"(b) * * * As used in Section 162, the term 'income which becomes payable' means income to which the legatee, heir, or beneficiary has a present right, whether or not such income is actually paid. Such right may be derived from the directions in the trust instrument or will to make distributions of income at a certain date, or from the exercise of the fiduciary's discretion to distribute income, *or from a recognized present right under the local law to obtain income or compel a distribution of income.*" (Italics supplied).

## III.

■ The intent of the Congress controls whether federal or state law is to be applied in the interpretation of federal tax statutes, and thus state property rights determine taxability when the applicable federal tax statutes adopt the state law as the test of taxability either by express language or necessary implication. Burnet v. Harmel, 1932, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Helvering v. Stuart, 1942, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154.

■ "Estates of deceased persons", as used in Section 161(a)(3) of the Internal Revenue Code, refers to the definition of this term under State Law, and thus State Law determines whether the community income is taxable in

whole to the estate of the deceased spouse, or half to his estate and half to the surviving spouse. Barbour v. Commissioner of Internal Revenue, 5 Cir., 1937, 89 F.2d 474; Commissioner of Internal Revenue v. Larson, 9 Cir., 1942, 131 F.2d 85; Bishop v. Commissioner of Internal Revenue, 9 Cir., 1945, 152 F.2d 389; Henderson's Estate v. Commissioner of Internal Revenue, 5 Cir., 1946, 155 F.2d 310.

## IV.

■ That local law must also be resorted to for the definition of "Income to be distributed currently" is made clear by Section 162(b) of the Internal Revenue Code defining such income as including "income * * * which, within the taxable year, *becomes payable* to the legatee * * *", and by the above quoted Treasury Regulations 111 (Sec. 29.162–2(b) ), in which is recited that:

"As used in Section 162 the term 'income, which becomes payable' means income to which the legatee, heir or beneficiary has a present right, whether or not such income is actually paid. Such right may be derived from the directions in the trust instrument or will or from the exercise of the fiduciary's discretion to distribute the income or *from a recognized present right under local law to obtain income or compel a distribution of income.*" (Italics supplied).

By express language, therefore, Section 162(b) and the regulation adopted thereunder make state property rights determinative of the question of whether or not income has "become payable" and is therefore "income which is to be distributed currently."

## V.

As heretofore noted, since "estate of deceased persons" as used in Section 161 (a)(3) of the Internal Revenue Code refers to the definition of this term under state law, state law determines whether community property income is taxable in whole to the estate of a deceased spouse,

or half to his estate and half to his surviving spouse. Barbour v. Commissioner of Internal Revenue; Commissioner of Internal Revenue v. Larson; Bishop v. Commissioner of Internal Revenue; Henderson's Estate v. Commissioner of Internal Revenue, supra.

In such a case the question involved is "as to the character of the executor's title during the period of administration". Henderson's Estate v. Commissioner of Internal Revenue, supra [155 F.2d 312].

## VI.

As noted in the Henderson Case, the issue of ownership of the wife's share in the pre-existing community is not affected by the fact that the community property may pass under administration.

Similarly, under the law of Louisiana, and, particularly because of the demand for delivery of their legacies and for the segregation of the dividends accruing thereon made by the particular legatees of this succession, the character of complainant's title to the shares of stock bequeathed these legatees and, as a consequence, to the dividends accruing thereon, was no different from that of the executors in the Succession of Henderson. Stated otherwise, the situation is that:

1. Each of the particular legatees of the stock involved had, from the day of the testator's death, a right to the stock bequeathed them and were, in fact, the owners of said stock, to the exclusion of the estate.

2. The demands made by the legatees for the delivery of their legacies and the dividends accruing thereon unequivocally fixed, as between complainant and said legatees, the right to the possession of the stock bequeathed and to the dividends involved, and

3. The fact that an actual delivery of said stock and dividends to the legatees might be delayed unless certain conditions were met, or even prevented entirely, by creditors of the estate, does not affect the question of their ownership of the stock and dividends involved, or the right to possession thereof as between complainant and said legatees, or the character of the executor's title during the period of administration.

## VII.

The Louisiana law establishing the status of the legacies involved herein and of the dividends paid thereon, is set out in Article 1626 of the Louisiana Civil Code of 1870, reading as follows:

"Every legacy under a particular title gives to the legatee, from the day of the testator's death, a right to the thing bequeathed, which right may be transmitted to his heirs or assigns; and this takes place as well in testamentary dispositions, universal or under a universal title, as in those made under a particular title.

"Nevertheless, the particular legatee can take possession of the thing bequeathed, or claim the proceeds or interest thereof, only from the day the demand of delivery was formed, according to the order hereinbefore established, or from the day on which that delivery was voluntarily granted to him." LSA–C.C. art. 1626.

Under this article, therefore, the legatees became possessed from the day of the testator's decease of a right to the stock bequeathed.

■ The *ownership* of the property bequeathed becomes vested in a particular legatee, even without a demand for delivery, although actual payment of the legacy to the prejudice of forced heirs and creditors may not be made immediately. Brewer v. Yazoo & M. V. R. Co., 1911, 128 La. 544, 54 So. 987, appeal dismissed 231 U.S. 245, 34 S.Ct. 90, 58 L. Ed. 204.

## VIII.

Being thus the owners of the stock bequeathed them, the right of these particular legatees to enter into actual possession of their legacies and to obtain

the benefit of the dividends accruing thereon, was limited only by the proviso that they make demand for the delivery of the legacies. This each of them did. Further, specific demand was also made for the revenues arising on said legacies, and that the segregation of said revenues, including specifically, "any and all *dividends* derived", was specially requested.

## IX.

The Testamentary Executor was the proper party upon whom to make such demand. LSA–Civil Code, Art. 1630.

## X.

█ Under the law of Louisiana, once such a demand for delivery is made the Executor has no right to refuse it quoad the legatee making such demand, despite the existence of creditors. Succession of Charmbury, 1882, 34 La.Ann. 21; Succession of Baumgarden, 1884, 36 La. Ann. 46.

Therefore, having accepted the legacies bequeathed them by their demand for delivery, and as owners of the stock bequeathed, the particular legatees of this succession had an unqualified right to insist upon the delivery of their legacies by the executor, and the latter, quoad these legatees, was under an absolute obligation to make delivery to them.

## XI.

█ So absolute was the particular legatees' ownership of the shares of stock bequeathed that from the moment of demand for delivery, pursuant to Article 1626 of the Louisiana Statutes Annotated–Civil Code, they became entitled to all the revenues accruing thereon. Succession of Quintero, 1946, 209 La. 279, 24 So.2d 589 at page 598, 16 A.L.R.2d 1150. These dividends therefore represented income to the particular legatees for whose account they were segregated, and formed no part of the estate's revenues on which it can be taxed.

## XII.

That alleged creditors might and did oppose the actual delivery of the legacies on which these dividends were paid cannot affect the question of the ownership of the stock involved and of the dividends paid thereon. Nor does the fact that the executors were forbidden by the provisions of Article 1012 of the Louisiana Statutes Annotated–Civil Code from making an actual delivery of these legacies, and as a consequence of the dividends, because of the intervention of certain alleged creditors in the succession proceedings by way of opposition to the executor's account proposing such delivery, change "the character of the executor's title during the period of administration."

Under the reasoning applied in the Henderson Case, the particular legatees were entitled to have taxed to them in their separate returns the income arising in the pertinent periods from the property belonging to them. At the most, therefore, the dividends received by the Executor on the shares bequeathed particular legatees consist of funds received as agent or trustee for the particular legatees and taxable to them, rather than income to the estate which is taxable to it.

## XIII.

█ Section 162(b) of the Internal Revenue Code allows as an additional deduction in computing the net income of an estate, the amount of income for the taxable year which is "to be distributed currently by the fiduciary to the legatees". As used in this subsection, furthermore, "income which is to be distributed currently" includes income which, within the taxable year, "becomes payable to the legatee".

Under the regulations applicable to Section 162 set out hereinabove, the term "income which becomes payable" means income to which "the legatee has a present right", and such right may be derived from "a recognized present

right under the local law to obtain income or to compel a distribution of income."

The particular legatees of this succession had such a present right under the local law to obtain their legacies and to enjoy the income therefrom.

### XIV.

It is the *existence* alone of the right under local law to obtain income or to compel its distribution, and not the actual *exercise* of the right which determines the question of to whom the income is taxable, and therefore whether or not the deduction provided by Section 162(b) is available. See Freuler v. Helvering, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, at page 640, with reference to a similar provision of a previous revenue act. See also Saulsbury v. U. S., D.C.1951, 101 F.Supp. 280, affirmed 5 Cir., 1952, 199 F.2d 578, certiorari denied 345 U.S. 906, 73 S.Ct. 645, 97 L.Ed. 1342.

Similarly, where, as in this case, there is no issue as to the right of property or the time of its distribution, or at least as to the right to compel its distribution, the income received by the Executor on the dividends bequeathed particular legatees must be held to constitute "income which is distributed currently", although not actually received by them, and particularly since it was in fact set aside and segregated for them.

### XV.

Because there existed under the State law a recognized present right in the legatees to obtain these dividends irrespective of whether such right was exercised, they clearly "became payable" to these legatees under the definition of that term in Treasury Regulations 111 (Section 29.162—2)(b), and as such are classified as "income which is to be distributed currently" under Section 162

(b) of the Internal Revenue Code, and hence deductible by the estate in computing its net income in each of the years involved.

### XVI.

If by any chance the dividends here involved should be considered as "income received by the estate during the period of administration or settlement", the amounts thereof were properly deducted under Section 162(c) of the Internal Revenue Code as having been "properly paid or credited" to the legatees involved.

Under this section, set out hereinabove, an estate is allowed an additional deduction in computing its net income for the amount thereof which "is properly paid or credited during such year to any legatee", who must then include such amount in computing his or her own net income.

### XVII.

The deficiency in tax asserted because of the deduction taken for these dividends on the estate's returns for the periods involved was without justification. Complainant is therefore entitled to the refund of the amounts overpaid as a result of having been required to include these dividends in these returns, amounting in total to the sum of Twenty-seven Thousand Ninety-Nine and 10/100 ($27,099.10) Dollars, together with interest thereon at the rate provided by law from the date payment was made, that is, from February 9, 1948.

### XVIII.

Complainant is entitled to recover of defendant Twenty-Seven Thousand Ninety-Nine and 10/100 ($27,099.10) Dollars, together with interest thereon at the rate provided by law from February 9, 1948.

Judgment may be entered accordingly.