Esther E. GRANT and Dorothy Ebersbach, Co-Executrices of the Estate of Charles Ebersbach, Deceased, Appellants,

v.

Harry F. BUSEY, Collector of Internal Revenue, Appellee.

No. 12447.

United States Court of Appeals
Sixth Circuit.

Feb. 14, 1956.

Roger K. Powell, Columbus, Ohio, for appellants.

Carolyn Just, Washington, D. C. (H. Brian Holland, Ellis N. Slack, Washington, D. C., Hugh K. Martin, Loren G. Windom, Columbus, Ohio, on the brief), for appellee.

Before SIMONS, Chief Judge, and McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

Charles Ebersbach, appellants' decedent, was a partner in the firm of Ebersbach Construction Company. The partnership reported its income on a fiscal year basis, from October 1 to September 30. Mr. Ebersbach died on August 9, 1943. His executrices included in his final income tax return for the period January 1, 1943, to August 9, 1943, the date of his death, the distributive share of the partnership income, which was determined on September 30, 1943; and they paid the income tax thereon.

Subsequently, claiming that they had erroneously filed such tax return, and thereby overpaid the tax, they made timely claim for refund of a portion thereof, which was denied by the Commissioner. Thereafter, they brought suit in the district court, which, upon hearing, denied the claim for refund and held in favor of the Commissioner. From that judgment, they appeal.

As to the issues, the Commissioner contends that decedent's distributive share of the income of the partnership for the period, October 1, 1942, to September 30, 1943, should be included in his individual income for the period, January 1, 1943, to August 9, 1943, the date of his death.[1]

Appellant executrices contend that decedent's distributive share of the partnership was determined on September 30, 1943, the end of the partnership's fiscal year, and was taxable to the entity then entitled to receive it, namely, the Estate of Charles Ebersbach.

As questions of the continuation or termination of the partnership, after the death of a partner, bear upon the issues to be resolved in this case, a brief outline of the nature of the partnership, its manner of operation, the relation of the partners to each other, and their understandings and agreements, is pertinent.

---

[1]. See Sections 182, 187, and 188 of the Internal Revenue Code of 1939, as amended by the Revenue Act of 1942.

26 U.S.C., 1952 Ed., Sections 182, 187, 188.

The Ebersbach Construction Company was an Ohio partnership, its members being the ten children of Martin Ebersbach and their heirs. Prior to 1939, the partnership was managed by Charles Ebersbach on behalf of all of the partners. On May 1, 1939, a written agreement was entered into by the partners, providing, among other matters, that the management or control of the enterprises operated by the partnership be placed in the hands of three of the partners, George, Charles, and Theodore Ebersbach, or their successors. These three partners were referred to in the agreement as trustees. It was further provided in the agreement between the partners that the three trustees, or their successors, *would manage, take charge of, and operate* the properties with a view to the distribution of the assets within a period of five years. In the management of the partnership, the agreement provided that the three trustees should have unlimited power to *continue* the operations then under way, including the general contracting business in Florida, but that they should not begin any new enterprises without the unanimous consent of all of the partners. The agreement was binding on the partners for a period of five years, during which the trustees "shall effect a gradual distribution of all of the assets." It was agreed that, in the event of the death, disability, or resignation of any one of the trustees, the vacancy so created *"shall be immediately filled by a person selected by the two remaining trustees,"* provided, however, that each of the three trustees named in the contract should have the power to name his successor by a written appointment, to be attached to the agreement.

■ Whatever may have been the effect of the death of Charles Ebersbach on August 9, 1943, as a dissolution of the partnership, it could not be said to terminate it; and the distinction between a dissolution and a termination of a partnership, as applied to tax matters, has long been judicially recognized. Henderson's Estate v. Commissioner, 5 Cir., 155 F.2d 310, 164 A.L.R. 1030; Commissioner of Internal Revenue v. Mnookin's Estate, 8 Cir., 184 F.2d 89. According to repeated revenue rulings,[2] a partnership, for federal income tax purposes, is to be judged by tax standards, and does not terminate upon the death of a partner, even though it is technically dissolved, unless its business is terminated; and a partnership which does not terminate continues to the end of its accounting period, and determines and distributes income accordingly.

■ The agreement of May 1, 1939, between all of the partners, has provided for the continuation of the partnership business at the will of the trustees, or for a period of five years, whichever should be the lesser. Moreover, it was agreed between them that in the event of the death of any of the trustee partners, the vacancy would be filled immediately by a person selected by the two remaining trustees. Since the contingency of the death of the partners was provided for in the contract executed by the partners, and provision for continuation of the partnership business therein expressly stipulated, it follows that the death of Charles Ebersbach did not terminate the partnership business.

Since the partnership was not terminated by the death of Mr. Ebersbach, it continued to the end of its normal accounting period, and decedent's distributive share, as determined by such period, was taxable to his estate. Commissioner of Internal Revenue v. Tyree's Estate, 10 Cir., 215 F.2d 78; Commissioner of Internal Revenue v. Mnookin's Estate, 8 Cir., 184 F.2d 89; Girard Trust Co. v. United States, 3 Cir., 182 F.2d 921; Henderson's Estate v. Commissioner, 5 Cir., 155 F.2d 310, 164 A.L.R. 1030.

2. Revenue Ruling 144 [1953] (I.R.B. 1953–16, 29); Revenue Ruling 54–31 (I.R.B. 1954–3, 11); Revenue Ruling 54–55 (I.R.B. 1954–6, 9); Revenue Ruling 54–484 (I.R.B. 1954–44, 13); Revenue Ruling 55–93 (I.R.B. 1955–8, 17).

In accordance with the foregoing, it is our conclusion that appellants are entitled to refund as claimed; and the judgment is, therefore, reversed and the case remanded to the district court for further proceedings consonant with this opinion.