262 P.2d 745

**PANTAGES v. ARGE.**

**No. 7977.**

Supreme Court of Utah.

Nov. 2, 1953.

George E. Bridwell, Salt Lake City, for appellant.

H. G. Metos, Salt Lake City, for respondent.

CROCKETT, Justice.

Paul Pantages and Sam Arge engaged in a partnership, buying and selling grapes. The adventure floundered on the rocks of discord. Pantages sued Arge for an accounting of money claimed; Arge countered in kind. The trial court awarded Pantages $1,173.28. Arge appeals claiming the following additional credits:

| | |
|---|---|
| 1. Alleged sale of truck at less than value | $ 500.00 |
| 2. Wages paid to Tom Argeropolis | 225.00 |
| 3. Traveling expenses | 309.72 |
| 4. Truck insurance | 206.26 |
| 5. Accounting services | 150.00 |
| | $1,390.98 |

This action for an accounting is in equity;[1] we review the evidence[2] in the light most favorable to Pantages who had judgment below,[3] which will not be disturbed unless the evidence clearly preponderates against the findings there made.[4]

The partners engaged in a number of transactions which were determined by the trial court not to pertain to the partnership. No issue is raised with respect thereto; we omit any reference to such matters and recite only those facts relevant to the errors assigned.

1. Crockett v. Nish, 106 Utah 241, 147 P. 2d 853, 854.
2. Utah Const. Art. VIII, Sec. 9.
3. Toomer's Estate v. Union Pacific R. Co., Utah, 239 P.2d 163.
4. Stanley v. Stanley, 97 Utah 520, 94 P.2d 465; Stevens v. Gray, Utah, 259 P.2d 889.

In September, 1951 Pantages and Arge entered into an oral partnership agreement which contemplated the acquisition of a truck and its use in buying, transporting, and selling grapes. Arge was to be managing partner, Pantages was to do the selling, and the arrangement was on an equal charge and contribution basis. Pantages turned in his Studebaker car as a down payment on a new Ford truck costing $3,669.88. The balance of $2,783.04 was payable in monthly installments. Title was taken in the name of Sam Arge.

About September 20, 1951, Arge sent his brother Tom Argeropolis with Pantages to buy a load of grapes in California. Sam Arge furnished $800 for this buying trip. Grapes were purchased for $620, the balance of $180 evidently being spent for traveling expenses on this and later trips. Returning to Salt Lake City, no ready market was found for the grapes and Arge, who was acquainted with merchants in Pocatello, Idaho, suggested that an attempt be made to sell the grapes there. Accordingly, Tom was sent to Idaho, Pantages remained in Salt Lake City, and Sam Arge followed Tom to assist in the selling. All but 40 or 50 crates of grapes were sold in Idaho, but no record was kept of the sales. Tom collected the money from the merchants, and finally turned over to Sam all but $225.00 which he withheld as wages for his work.

After this first venture, Arge turned the truck over to Pantages and told him that he could get a second load of grapes if he desired, but that he was on his own and would be expected to keep up the truck payments. Following a second trip to California, Pantages continued to use the truck for his personal business and pleasure with Arge's consent, and the truck remained in Pantages' possession until June, 1952 when Arge instituted a claim and delivery action against Pantages and took possession of the truck through the sheriff and then promptly dismissed the action. Arge defends this behavior by pointing out that installments were due and owing on the truck, that since the truck was in his name, he had been threatened with suit; so, to minimize expense and further loss, he wanted to sell the truck and pay off the debt upon it. Arge placed it upon a used car lot in Salt Lake where it sat for a few weeks. Among several offers made, all of which were refused by Arge, the highest was $1,600. The truck eventually sold through the Salt Lake Auction, a wholesale car market, for $1,800. Out of this Arge paid off the balance owing the finance company ($1,483.48) the auction fee of $25, and deposited the remainder ($291.52) to his own account.

Upon the basis of the foregoing and certain other facts hereinafter noted, Pantages brought this suit which resulted in judgment in his favor for $1,173.28 as announced in the first paragraph of this opinion. We now turn attention to the 5 items about which Arge complains on this appeal, referring to each by the same number as above given it.

■ 1—Obtaining possession of the truck by force and selling it as Arge did is assailed by Pantages as an act of dissolution, wherefore, he insists Arge must account for its value at the time of its alleged misappropriation. Whether Arge's act should be regarded as a misappropriation of firm property for his personal advantage without Pantages' consent is of no critical moment here. Arge does not challenge the ruling of the trial court that he should account for it at the time it was taken but does question the value of $2,300 placed upon it by the trial court. Pantages attempted to prove by an expert witness that the then reasonable market value of the truck was $2,300. However, on cross-examination, the witness admitted that as truck buyer for his employer, Bennett Motor Company, he could probably only offer $1,800 for the truck, but that once purchased for that sum, Bennett's would sell it for $2,300. The expert's testimony is only as strong as it is left by his cross-examination,[5] which raises considerable doubt that a reasonable market value of $2,300 could be placed upon the truck. In addition to this, fairness compels that these circumstances also be considered: the installment payments were in arrears; notices thereof had been sent to both partners, and the evidence is persuasive that Arge was acting in good faith in an effort to prevent suit by the finance company to avoid further loss. According-ly, under the rule hereinabove announced,[6] the charge of $500 against Arge for selling the truck at less than value cannot stand, and should be eliminated as a charge against him.

■ 2—The item of Tom's wages was evidenced at the trial by a memorandum for the $225 withheld by Tom for money collected in Idaho from the sales of grapes. He had worked for the partnership for 3 weeks and Pantages does not contend that $75 per week was excessive. The trial court found that the $225 paid Tom is reflected as part of the sales expense, yet the total sales expenses shown ($805.95) is accounted for without this item. The account charges Arge with the total proceeds from the sale of grapes in Idaho, but in view of the foregoing evidence, which is undisputed, he should be credited with the $225. paid to Tom Argeropolis.

■■ 3—Inasmuch as Arge is the partner asserting the expenses incurred on the buying and selling trips against the partnership, the burden is upon him to prove them.[7] There is some evidence to the effect that Arge asked that all receipts for expenses be given him so he could deduct them from his income for tax purposes and that some such expenses not chargeable to this business were so handled. The court is left to conjecture as to the connection some of the gasoline bills submitted may

5. Sullivan v. Beneficial Life Ins. Co., 91 Utah 405, 64 P.2d 351, 359.

6. See footnote 4, supra.

7. Stevens v. Gray, Utah, 259 P.2d 889.

have with the partnership enterprise. In view of these facts and the denial by Pantages that such bills were incurred by the partnership, we cannot say the trial court erred in allowing only the $805.95 sales expense.

■ 4—The insurance item referred to is evidenced by a recepit for $330.28 claimed by Arge as a contribution for insurance on the truck. Arge occupied a dual role with respect thereto because the policy was issued by his own insurance company and he paid the premium for the partnership. There was testimony that at least some insurance had been cancelled after the truck ceased to make "long hauls," and an exhibit in Arge's own handwriting contains the words "insurance paid by me—$124.03." On the basis of this, the trial court was justified in allowing only the latter sum as Arge's credit on the insurance.

■ 5—As to the accounting fee of $150: assuming Pantages is right in his contention that Arge's conduct constituted acts of dissolution, the partnership was not thus terminated and its affairs had to be wound up.[8] Although the accountant hired was Arge's regular accountant, he was a qualified public accountant and also worked for others. The work he did was necessary and beneficial, not only to the partnership, but also to the court, and the reasonableness of the charge of $150. is not disputed. His services should be paid for by the partnership.

The accounting as set up and approved in the findings of the trial court is affirmed except as indicated in this opinion, and as to such items, the judgment is to be modified in conformity herewith. Costs to appellant.

WOLFE, C. J., and McDONOUGH, HENRIOD and WADE, JJ., concur.