244 F.2d 436
 ESTATE of Frank H. KNIPP, Howard F. Knipp, Executor, Petitioner, and Cross-Respondent, and
Howard F. Knipp, and Estate of Frank H. Knipp, Howard F. Knipp, Executor, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent and Cross-Petitioner, and
Commissioner of Internal Revenue, Respondent.
 No. 7302.
 United States Court of Appeals Fourth Circuit.
 Argued November 26, 1956.
 Decided April 10, 1957.
 
 Carolyn E. Agger, Washington, D. C. (Paul, Weiss, Rifkind Wharton & Garrison, and Julius M. Greisman, Washington, D. C., on brief), for petitioners and cross-respondent.
 L. W. Post, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, and Robert M. Anderson, Attys., Dept. of Justice, Washington, D. C., on brief), for respondent and cross-petitioner.
 Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.
 SOBELOFF, Circuit Judge.
 
 
 1
 The principal problem of this case relates to the proper time for taxing partnership income earned in the year of the death of one of the partners.
 
 
 2
 A partnership is not a taxable entity under our internal revenue laws, but it has a taxable year for accounting purposes and is required to make an information return, which becomes the basis for computing the partners' individual income. As the partnership fiscal year may be different from that of the individual partners, the law, U. S. Internal Revenue Code of 1939, Sec. 188, 26 U.S.C.A. § 188, undertakes to deal specifically with this situation. The controversy here hinges upon the proper application of this section, which provides that where the partnership taxable (fiscal) year is different from that of the individual partner, he shall include in the net income for his taxable year his share of the partnership net income for any partnership taxable year which ends during his individual tax year.[1]
 
 
 3
 In the instant case the partnership had a fiscal year ending January 31, while the partners were on the calendar year basis. Hence, for a number of years, by the operation of Section 188, the individual partners paid income tax on their respective shares of partnership income only for that partnership year which closed during the calendar year. Thus, in reporting 1946 income, each partner included his share of partnership income for the fiscal year which began February 1, 1945, and ended January 31, 1946. Partnership income earned during the remaining eleven months of 1946 pertained to the fiscal year ending January 31, 1947, and was reported in the individual returns for the calendar year 1947.
 
 
 4
 Our decision is required as to whether, as the Commissioner of Internal Revenue contends, the death of a partner on November 21, 1947, terminated the partnership for income tax purposes as of that date so as to make taxable as 1947 income the partners' respective shares of partnership income which accrued from February 1, 1947, to November 21, 1947. The alternative treatment, for which the taxpayers are here striving, is that the partnership should be deemed to have continued for income tax purposes, despite the partner's death on November 21, 1947, until February 1, 1948, the end of the normal partnership fiscal year. In that case, the income should be taxed as 1948 income.
 
 
 5
 For many years the firm of John C. Knipp and Sons had been engaged in the business of retail furniture, interior woodwork, and shipfitting. Since 1945 the business had been conducted by two partners, Howard F. Knipp and his uncle, Frank H. Knipp; and by the partnership agreement, each made a regular monthly withdrawal, which was called "salary," at the rate of $25,000.00 annually. Profits over and above salary, as well as losses, were shared equally, but were not distributed until the conclusion of the partnership's fiscal year the following January 31.
 
 
 6
 A highly important provision of the partnership agreement, paragraph 11,[2] required that to become entitled to share in any fiscal year's profits, a partner must have survived the end of that year. On the death of a partner, he and his estate would have no right to any part of the profits of the current fiscal year beyond the amount of salary paid or due him up to the time of his death. Settlement of his interest in the partnership assets was to be made by reference to the capital accounts as of the February 1 prior to death. It is necessary to note the effect of this unique provision, whereby a partner lost all participation not only in profits accruing after his death, but even in such profits as had been earned during the portion of the fiscal year in which he lived and contributed to the business.
 
 
 7
 On November 21, 1947, Frank Knipp died, thereby terminating his and his estate's interest in partnership profits earned since the preceding January 31, except the $20,700.00 of salary which had been paid or become due him before his death. Frank's capital account as of the end of the last fiscal year preceding his death (January 31, 1947) had a credit balance of $226,320.90. This was subsequently reduced to $54,875.96 by May 19, 1949, when his estate tax return was filed. The reduction was occasioned by settlement and renegotiation of certain government contracts. These renegotiations had begun prior to Frank's death.
 
 
 8
 When the usual partnership information return had been duly filed for the fiscal year ending January 31, 1947, it showed a net income of $309,027.21 distributable in equal shares to Frank and Howard. The individual tax return for Frank's 1947 income (filed by his executor) included Frank's one-half share of this sum, $154,513.61. It did not, however, include the $20,700.00 which he received as salary from February 1, 1947, until his death. This amount was reported instead as 1948 income, on the theory that the partnership fiscal year continued, despite Frank's death, until January 31, 1948. The Commissioner, asserting that the partnership tax year was terminated by Frank's death determined a deficiency for 1947, designating the salary of $20,700.00 as 1947, rather than 1948, income.
 
 
 9
 Similarly, Howard filed his return, reporting as 1947 income only his share of the partnership income for the fiscal year ending January 31, 1947. The entire partnership profits earned between February 1, 1947, and November 21, 1947, to which Howard alone was entitled (less $20,700.00 salary for Frank), and all income from November 21 to December 31, as well, were not reported until the following year, when they were returned as 1948 income. As with Frank, the Commissioner determined a deficiency in Howard's 1947 taxes, on the theory that by the operation of paragraph 11, Frank's death terminated the partnership tax year, and all income of the business from January 31, 1947, to the end of the calendar year was taxable to Howard as 1947, and not as 1948, income.
 
 
 10
 The law is authoritatively declared for us in Guaranty Trust Co. of New York v. Commissioner, 303 U.S. 493, 58 S.Ct. 673, 82 L.Ed. 975. Paragraph 11 of the Knipp partnership agreement makes the analogy between the two cases a close one.
 
 
 11
 In the Guaranty Trust case, the partnership was on a fiscal year basis ending July 31, while the deceased partner was on a calendar year basis. After his death on December 16, 1933, the trust company, his executor, making its return for the decedent's 1933 income, included his share of the firm profits accruing to the end of the fiscal year on July 31, 1933, but omitted his share of the firm profits earned between that date and his death. The Commissioner determined a deficiency by adding to the 1933 taxable income the decedent's share of firm profits between July 31 and December 16, 1933.
 
 
 12
 The basis of the Supreme Court's decision that the Commissioner's determination was correct was that both by the practical construction given to the partnership agreement by petitioner and the surviving partners, and by the applicable provisions of the New York Partnership Law, McKinney's Consol. Laws, c. 39, decedent's death dissolved the partnership, terminated his right to share in the profits, and fixed the date as of which the surviving partners were bound to account for profits. The Supreme Court held that the Congressional purpose was to make taxable in the individual taxpayer's year all income distributable to him during that year. A pertinent lesson of that case is that "receipt of income or accrual of the right to receive it within the tax year is the test of taxability." Guaranty Trust Co. of New York v. Commissioner, supra, 303 U.S. at page 498, 58 S.Ct. at page 676. Earlier, in the Court of Appeals for the Second Circuit, which likewise decided the case for the Commissioner, Judge Chase had said, 89 F.2d 692, 693: "The accounting whenever it took place was as of that date [the death]. That was when, in contemplation of law, his share of the profits became distributable." In neither Court was the fact that the accounting was not completed until the following calendar year treated as material. We cannot escape the clear effect of the decision in the Guaranty Trust case that termination of sharing in profits was for the purposes of the income tax law a termination of the partnership tax year.
 
 
 13
 In the instant case, the same result is required by paragraph 11 of the partnership agreement. By its command, the partnership, as far as participation in income was concerned, ceased to exist. By virtue of Frank's death, Howard received all profits from partnership transactions, not only with respect to business yet to be completed during the winding-up period, but indeed, even profits on completed transactions dating back as far as January 31, 1947.
 
 
 14
 The petitioners think it significant that in Guaranty Trust, the surviving partners undertook to form a new partnership after the decedent's death, to take effect retroactively as of the date of his death. Here, Howard formed a corporation that took over the business as of January 31, 1948; but in the intervening period, from November 21, 1947, to January 31, 1948, paragraph 11 of the partnership articles created the same result as in Guaranty Trust by completely immunizing the decedent's estate from all operations, whether resulting in profits or losses. The fact that in Guaranty Trust, the succession was by a number of partners, while here it was by one individual, does not distinguish the cases. The significant fact common to both cases is that the partnership fiscal year ended when the decedent's estate no longer had its capital at risk, to be affected by gains or losses from the operation of the business.
 
 
 15
 In no true sense can it be said that after Frank's death, Howard was winding up the business of the partnership; he was operating on his own, and Frank's estate had nothing at stake. The income tax law is concerned merely with income, and inasmuch as sharing of profits had ceased, the partnership had effectually terminated in the eyes of the tax law.
 
 
 16
 We are not dealing here with the normal situation, where the decedent partner continues during the winding-up period to share in profits accruing from outstanding transactions. See note, 80 A.L.R. 15, 32. Under generally recognized local law, there is such a sharing of partnership profits where the partners have made no other agreement; but nothing precludes their making such an arrangement as was made here. The Uniform Partnership Act, which is in effect in Maryland, Article 73A, Flack's Annotated Code of Maryland, was in effect in New York when the Guaranty Trust case arose and was referred to in that opinion; yet its provisions, which include the distinction normally to be observed between dissolution and termination, were not deemed in the circumstances to prevent termination of the partnership tax year at the time of the death. Where the partners have not substituted their own arrangement, and the deceased partner's interest continues to be subject to pending transactions, the law recognizes that ordinarily, there is good reason for allowing the tax year to continue after dissolution and until its normal conclusion, unless sooner terminated by a complete winding-up of the firm. In the present circumstances there is no reason for the distinction between dissolution and termination, at least as far as the income tax law is concerned.
 
 
 17
 The Government advances the additional argument that one cannot be a partner with himself and that, for this reason, too, the partnership year terminated as of Frank's death. We agree with the taxpayer that this argument draws an unnatural distinction between cases where a single partner survives and where there are more than one survivor. We have shown that under the Uniform Partnership Act a single survivor may, as to unfinished business, be a partner with the decedent; and in an appropriate case the partnership will, under a legal fiction, be deemed to continue. The distinction to be made here, however, is that the parties specifically agreed not to be partners as to income arising after Frank's death; and the same result would seem to follow from such an agreement where there is only one survivor, no less than if there were more than one. Here the parties negatived any post-mortem partnership; none is required by the necessities of the situation; nor will the Uniform Partnership Act impose it.
 
 
 18
 But, it is insisted, the pending negotiations, begun before Frank's death but completed later, might have affected not only the capital accounts of the partners as of January 31, 1947, as they indeed did, but they might also have wiped them out, and affected the income of Frank which had been paid or was due him in the form of withdrawals. This contention, however, must fail, for it is directly contrary to a clear and indisputable finding of fact made by the Tax Court in construing the written agreement and oral understandings. The decedent's withdrawals, according to the finding, were not to be affected by outstanding partnership debts; for "* * * if the partnership income was insufficient to cover the partners' contractual drawings in any year, a partner who died during the year could not be charged with any part of the decrease in net partnership assets, and was entitled to his full contractual drawings or `salary.'"
 
 
 19
 If Frank's share was fixed, it follows that Howard's was, too. Howard was entitled to all the profits of the business arising after January 31, 1947. While the exact amount might be subject to computation and might not be free from uncertainty by reason of pending renegotiations, he was no less certain as to the amount of his income in the year 1947 than any business man similarly engaged in business as an individual. Every taxpayer in a going business must compute his profits at the end of the tax year, since the scheme of the statute contemplates annual returns and the taxation of annual income, although it necessarily involves estimates in some instances which may require correction at a later time.
 
 
 20
 Decisions in several circuits have been cited to us as supporting a contrary view. Henderson's Estate v. Commissioner, 5 Cir., 155 F.2d 310, 164 A.L.R. 1030; Girard Trust Co. v. United States, 3 Cir., 182 F.2d 921; Commissioner of Internal Revenue v. Mnookin's Estate, 8 Cir., 184 F.2d 89. These, however, turned on facts negatived here. They disclose the converse of the arrangement between the Knipps, because in those cases there was a continuation of the sharing of partnership income after the death of a partner. The two situations are so different as to require a difference in result. This was recognized in Girard Trust Co. v. United States, 3 Cir., 182 F.2d 921, a case chiefly relied on by the taxpayers. The opinion, by Judge Hastie, contains, 182 F.2d at page 924, this significant language: "If there is no agreement for continuation upon the death of a partner, and if distributive shares are determined and allotted as of that date, the partnership has established an abbreviated accounting period and taxable year conterminous with the life of the deceased partner." Even where the deceased partner's estate continued to share in profits for a short period after his death, the Court of Appeals for the Second Circuit felt constrained to follow the Guaranty Trust decision. Commissioner of Internal Revenue v. Waldman's Estate, 2 Cir., 196 F.2d 83.
 
 
 21
 Reliance is placed, also, upon the decision in Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337. We think such reliance misconceived. In that case, two corporations in the whiskey business had begun liquidation in 1918. The three stockholders, upon assignment to them of the corporate assets, took over the liquidation as partners. One of them, Frick, died in December, 1919. The question before the Supreme Court was whether profits distributed to the surviving partners, the Mellon brothers, in 1920, the year after Frick's death, should be taxed in that year, or not until the liquidation had been completed. The Mellons argued that in a liquidation, one could never be certain before its termination whether it would finally result in a profit or a loss. The liquidation in fact continued till 1925. It was held that the business of the partnership was liquidation, and the Mellon brothers had to pay taxes on the profits each year as realized. The question there was not whether a tax year terminated upon the death of a partner, and it is significant that the Supreme Court did not think this was the point involved, for it did not even refer to the Guaranty Trust case, which adjudicated such an issue less than two months earlier.
 
 
 22
 We have been referred to certain new statutory provisions in the Internal Revenue Code of 1954, Section 706(c), as having some indirect bearing on the case before us. The suggestion is made that this new provision, that death shall not end the taxable year of the partnership, was merely declaratory of the old law. With this, however, we cannot agree. "Bunching" of more than a year's income in a single tax year was, indeed, sought to be eliminated by Section 706(c). True, the Senate Committee Report (see U. S. Code Congressional and Administrative News 1954, p. 4723) does not explicitly treat bunching as permitted under the 1939 Internal Revenue Code, which controls this case. The report speaks in uncertain terms of such a "contention" being made. It cannot, however, be inferred from this alone that the Senate regarded the new Code as merely declaratory of the old law. The House Committee Report, on the other hand, plainly evidences the opinion that the new statute was not merely declaratory, but designed to effect a change in the law. It recites:
 
 
 23
 "Under present law the death of a partner may result in the closing of the partnership year and the bunching of more than a year's income in the decedent's last year. Where the partnership and the partners are on different taxable years, this rule may have the effect of concentrating as much as 23 months' income in the final return of the deceased partner, that is, the income for the partnership year ending within his taxable year and the income for the taxable year closed by the partner's death. The bill provides relief in this situation by preventing the partnership year from closing on the death of the partner. The partnership year will then run to its normal conclusion, and the decedent's share of the income for such year will be taxable to the estate." See U. S. Code Congressional and Administrative News 1954, p. 4093.
 
 
 24
 It is not within our province to give retroactive effect to the 1954 Act.
 
 
 25
 We have fully considered Mr. Justice Stone's observation in the Guaranty Trust Company case, that if the income in question were not taxable in 1933, it would not be taxable at all. It was proposed to us in argument that since the law was later changed to prevent escape from taxation,[3] the result here should not be controlled by Guaranty Trust. The suggestion cannot prevail for two reasons: first, because this feature of the old law was merely noted in passing and was not the basis of the Court's opinion in the Guaranty Trust case, as shown in the foregoing discussion and as recognized in Commissioner of Internal Revenue v. Waldman's Estate, supra, 196 F.2d 85; second, because it attributes to the Supreme Court a purpose to revise rather than interpret the income tax laws.
 
 
 26
 The argument that bunching income works a hardship in this case is the same as the one overruled in the Guaranty Trust case. Moreover, were the hardship of bunching a pertinent consideration, it would be mitigated by the fact that for a number of years, these taxpayers had the advantage of paying their taxes almost a year late because the partnership fiscal year deferred taxes on eleven months of firm profits until the following year. Fundamentally, the hardship here results from the fact that Howard's income was greater in 1947 than in 1948. If his 1948 income exceeded that of 1947, the rule for which he now contends would work to his disadvantage. We cannot be certain which interpretation of this statute will, in the long run, be more helpful to the Government, and which to taxpayers. Even if we had a discretion in the matter, this should admonish us against letting the interpretation of a statute turn on a purely fortuitous circumstance; for in straining to avoid hardship here, we may make ourselves responsible for inflicting hardship upon future litigants. We are bound, in any event, by the Guaranty Trust case, and have no power to revise the law to meet the supposed equities of particular cases.
 
 II
 
 27
 A second issue, raised by the Government's appeal, relates to computation of Frank's gross estate for estate tax purposes. The Tax Court held that the share of firm profits, above "salary," which Frank would have received for the period January 31, 1947, to November 21, 1947, had he lived, was not includable in his gross estate under Section 811(a) of the Internal Revenue Code of 1939. The Commissioner seeks reversal of this decision, reasoning that these profits constituted property of Frank at his death and passed to Howard by the partnership agreement as a testamentary disposition.
 
 
 28
 We are, however, unable to accept this reasoning, and agree with the decision of the Tax Court. The Commissioner's contention sharply conflicts with the plain and practical effect of the articles of partnership, which required a partner to live to the end of the partnership tax year in order to acquire any interest in the year's profits. Sharing, beyond accrued salary, was clearly dependent upon survivorship, and unless this contingency was satisfied, a partner had no vested right in any part of the profits for any portion of the fiscal year. As the Tax Court correctly observed, the right to share was potential only and did not mature till the end of the tax year, if the partner was then living. In view of this, we do not think it would be correct to say that Frank, at the time of his death, possessed any share in the firm profits includable in his gross estate.
 
 
 29
 Accordingly, we uphold the decisions of the Tax Court upon both questions.
 
 
 30
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 "If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner. 53 Stat. 71." 26 U.S.C.A. § 188
 
 
 [2]
 "Eleven. It is agreed among the partners hereto, anything in this agreement to the contrary notwithstanding, that in the event of any partner's death, the amount to the credit of said deceased partner on the firm's books on February 1, 1943, or on February 1st in any subsequent year, provided the partnership has run for twelve consecutive months; otherwise the date of settlement shall be as of the prior February 1st, less the amount of his withdrawals over salary, shall be paid to the Executors or Administrators of said deceased partner, and same shall be in full settlement of the deceased partner's interest in said partnership." (Agreement of Co-partnership between Frank H. Knipp, Howard F. Knipp and John C. Knipp, July 7, 1943.)
 
 
 [3]
 Sec. 42(a), Internal Revenue Act of 1934, as amended in 1942; and also Sec. 126 of the Internal Revenue Act of 1942, 26 U.S.C.A., I.R.C.1939, §§ 42(a), 126
 
 
 
 31
 PARKER, Chief Judge (dissenting in part).
 
 
 32
 I agree with that part of the decision of the Court which relates to the estate tax, but respectfully dissent from its holding that the earnings of the partnership were taxable as income to the partners for the year 1947, and not at the end of the partnership's fiscal year in 1948. Sec. 188 of the Revenue Code of 1939, which is the section applicable here, provides:
 
 
 33
 "If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner."
 
 
 34
 The death of Frank on November 21, 1947, unquestionably dissolved the partnership. The question is whether it also terminated the partnership for all purposes, so that the fiscal year of the partnership ended with Frank's death, or whether the partnership was continued for the purpose of winding up its affairs, so that its fiscal year for tax purposes did not end until January 31, 1948.
 
 
 35
 The facts are that the partnership was engaged in the performance of contracts which extended over considerable periods of time and, in the case of contracts with the government, were subject to termination and to renegotiation. Frank's capital account on January 31, 1947, to his credit on the books of the partnership, amounted to $226,320.90. As a result of negotiations with the government extending to as late as October 1951 and resulting in refunds and disallowances of claims, this balance was reduced to $54,875.96. On February 1, 1948 the business and assets of the partnership were transferred to and taken over by a corporation; and there can be no question but that the partnership business was continued and the settlement of its affairs was carried on by Howard as surviving partner until that date. On January 31, 1948, the partnership filed a tax return showing ordinary net income of $450,158.91, distributable in accordance with the partnership agreement[1] $429,458.91 to Howard and $20,700 (salary prior to death) to the estate of Frank. The contention of taxpayers is that under the statute above quoted this income was taxable to them for the year 1948. The contention of the Commissioner is that the partnership was ended for all purposes on Frank's death in 1947 and that the income of the partnership after January 31, 1947 was taxable to the partners in that year, notwithstanding that it will result in the injustice of requiring them to pay tax on partnership income for approximately 22 months in a single year. The position of taxpayers not only is in accordance with what is just and right under the circumstances of the case, but is also, I think, in accordance with the statutory requirement.
 
 
 36
 While the partnership agreement contained no provision for the continuance of the partnership business for purposes of liquidation in the case of the death of one of the partners, this was unquestionably provided by the law of Maryland, the state in which the partnership was operating. It is there expressly provided by statute that the death of a partner dissolves the partnership, but that the partnership is not terminated by dissolution but continues until the winding up of partnership affairs is completed, and that the last surviving partner has the right to wind up the partnership affairs. Flack's Annotated Code of Maryland, Article 73A secs. 30, 31 and 37. Here, not only did the law authorize the continuance of the partnership for the purpose of winding up partnership affairs, but the partnership was actually continued for that purpose until its business and assets were transferred to a corporation on February 1, 1948. In the meantime, although the deceased partner could not share in profits, it is perfectly clear that his share of the partnership profits could not be ascertained until the end of its fiscal year because of claims that might be asserted and adjustments and settlements that would have to be made and were made with customers and creditors. The importance of this clearly appears from the fact that Frank's capital account on the books of the partnership shrank as a result of claims against the partnership and negotiations and adjustments from $226,320.90 on January 31, 1947 to $54,895.96 when these matters were finally closed up sometime after his death. If the claims had been sufficiently large, they could have wiped out, not only the capital account, but all right to receive anything as profits from the earnings of the current fiscal year.[2] In such situation it was not possible, at the time of Frank's death, to determine what the earnings of the partnership were, and no reason why the rule of the statute should not be applied, i. e., no reason why returns of income derived from the partnership should not be made by the partners on the basis of the partnership's fiscal year, even though the partnership had been dissolved and was in process of liquidation during the last two months of the year.
 
 
 37
 In point is the decision of the Supreme Court in Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 929, 82 L.Ed. 1337. In that case it was held that the death of one of the partners, which dissolved the partnership before the tax year in question, did not terminate the partnership or relieve it from filing a return. It is true that in that case the estate of the deceased partner shared in the profits of the continuing business; but the criterion laid down by the Supreme Court was not the sharing of profits but the continuing of the partnership business, as here, until the winding up of the partnership affairs. The Supreme Court referred to the statute of Pennsylvania which is like the statute of Maryland in that regard, saying:
 
 
 38
 "The fact that the partnerships had been dissolved by Frick's death before 1920 does not affect the liability of the Mellons as surviving partners for income taxes on their distributive shares of the net profits made in that year. Compare Rossmoore v. Anderson, D.C.S.D.N.Y., 1 F.Supp. 35, affirmed, 2 Cir., 67 F.2d 1009; Rossmoore v. Commissioner, 2 Cir., 76 F.2d 520. The business of A. Overholt & Company did not terminate on Frick's death. Although dissolved, the partnerships and the business continued, since, as stated in the Pennsylvania Uniform Partnership Act [59 P.S. § 1 et seq.]: `On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.' Throughout the year 1920, the business of selling stock on hand and deriving income therefrom was carried on precisely as it had been theretofore, and for the same purpose. Article 424 of Regulations 45 recognizes that even in the hands of a receiver a partnership must file a return."
 
 
 39
 The Commissioner relies, and the Tax Court bases its decision, very largely on Guaranty Trust Co. of New York v. Commissioner, 303 U.S. 493, 58 S.Ct. 673, 676, 82 L.Ed. 975, which held that the return for a deceased partner on the calendar year basis must include his share of partnership profits made by the partnership from the beginning of its fiscal year to the time of his death within the calendar year. In that case, however, there was not a continuing of the partnership business for purposes of liquidation, but the amount to be received by the estate of decedent was fixed and the business was carried on under a new agreement. The question in the case was whether the decedent's share of the earnings for the portion of the fiscal year prior to his death was to escape taxation,[3] not whether it should be taxed in the succeeding calendar year. In that case the Supreme Court said "Receipt of income or accrual of the right to receive it within the tax year is the test of taxability, not the time it has taken the taxpayer to earn it nor the duration of his investments which have finally resulted in profit." Here the right of taxpayers to receive income in connection with the partnership business did not accrue or become fixed upon Frank's death but depended upon the partnership business, which was continued for purposes of liquidation.
 
 
 40
 A decision of the Tax Court which is directly in point and which sustains the position that the earnings of the partnership here involved should be taxed in 1948, the end of the partnership's fiscal year, and not in 1947 because Frank died in that year, is Walsh v. Commissioner, 7 T.C. 205, in which the Tax Court gave full consideration to both the Mellon and the Guaranty Trust cases. In that case one of the partners in a partnership with a fiscal year ending May 31 died on July 7, 1939. It was held that the surviving partner who reported on a calendar year basis should account for profits of the partnership in the year 1940, and not in 1939, on the ground that the partnership, although dissolved by the death of the partners, was not terminated and no new partnership was created. The Tax Court said:
 
 
 41
 "The evidence here is clear that after Elliott's death there were no new partnerships created. Although the old partnerships were dissolved by Elliott's death, they were not terminated. Dial v. Martin, Tex. Civ.App., 37 S.W.2d 166, 177. The business being conducted by the partnerships had to be wound up by the surviving partners and an accounting made to the heirs and personal representatives of the deceased partner. Dial v. Martin, supra. In that case the court, among other things said: `Where a partnership is dissolved by the death of one of the partners, the surviving partner or partners have the right, and, moreover, it is their duty, to wind up the firm's business, and he is, in the eyes of the law, a trustee of the firm assets for that purpose, and as such trustee is entitled to the exclusive possession of all firm assets. * * *.'
 
 
 42
 "To the same effect as above is Heiner v. Mellon, 304 U.S. 271 [58 S.Ct. 926, 82 L.Ed. 1337]. This case was decided by the Supreme Court some forty-eight days after it decided Guaranty Trust Co. of New York, supra, and in our opinion, throws more light on the issue which we have here to decide than does the Guaranty Trust Co. case." The rulings of the Internal Revenue Service have been in accord with the principles of this decision,[4] although not dealing with the case of a two member partnership which is continued after the death of one of the partners solely for the purpose of winding up and without participation in profits of such continued operation by the estate of the deceased partner. The Commissioner contends that there is a difference between the case where there are two or more surviving partners and where there is only one; but there is no basis in reason for such a distinction, just as there is no basis in reason for holding that there must be a sharing in profits from the continuation of the business for the purpose of winding it up. The statute contemplates that the partners shall account for partnership income in their returns as though it were received by them at the end of the partnership's tax year; and what makes the rule applicable notwithstanding the death of a partner is, not the number of partners nor the extent to which they do or do not share in profits, but the fact that the partnership business continues, even though this is only for purposes of liquidation, and that the interest of surviving partners may be affected thereby, even though this may be the result of claims, losses and adjustments without right to share in profits. Not until the end of the fiscal year of the partnership can it be determined what its earnings and profits for the year were; and not until then is there any reason for requiring a partner or the estate of a deceased partner to list as income his share of the partnership profits.
 
 
 43
 The government admits in argument that if there were more than one surviving partner, the rule contended for by taxpayers would be applicable, arguing that no man can be a partner with himself. This, however, is an oversimplification of the problem. The partnership is unquestionably dissolved by the death of one of the partners. The business is continued by the surviving partner, however, under the applicable statute for purposes of liquidation; and tax liability of partners, like other matters of business affecting the partnership, should be handled just as they were before dissolution. This is the sensible interpretation of the statute and it avoids the injustice to the taxpayer which would result from the bunching of income for a longer period within a single tax year.
 
 
 44
 The decisions in all of the Circuits which have dealt with the question, except the Second Circuit, support the position here taken. Henderson's Estate v. Commissioner, 5 Cir., 155 F.2d 310, 164 A.L.R. 1030; Girard Trust Co. v. United States, 3 Cir., 182 F.2d 921; Commissioner of Internal Revenue v. Mnookin's Estate, 8 Cir., 184 F.2d 89; Commissioner of Internal Revenue v. Tyree's Estate, 10 Cir., 215 F.2d 78, 80. Cf. Commissioner of Internal Revenue v. Waldman's Estate, 2 Cir., 196 F.2d 83, in which there was a dissenting opinion by Judge Augustus N. Hand, who thought that the reasoning of the Third Circuit in the case of Girard Trust Co., supra, should be followed. The case of Commissioner of Internal Revenue v. Tyree's Estate, supra, is directly in point here, the holding being that income from a partnership dissolved by the death of one of the partners was not returnable by the partners until the year in which the fiscal year of the partnership ended, where the law of Utah as well as the partnership agreement required that the partnership be continued after the death of a partner for the purpose of winding up its affairs. The court said:
 
 
 45
 "Of course, when the doctor died he could no longer be a partner and, so far as he was concerned, the partnership terminated, but he had, however, agreed as to how the partnership affairs should be handled in case of the death of a partner. The Utah General Partnership Act provides that `On dissolution a partnership is not terminated, but continues until the winding up of partnership affairs is completed.' 5 U. C.A. 1953, § 48-1-27. Pantages v. Arge, 1 Utah 2d 105, 262 P.2d 745. The partnership affairs were continued as provided for in the agreement, and at the end of the first fiscal year after the death of Dr. Tyree, a distribution was made to his estate. Had he lived, the distribution would have been made at the same time.
 
 
 46
 "The Commissioner urges that the decision of the Tax Court is not in harmony with Guaranty Trust Co. of New York v. Commissioner, 303 U.S. 493, 58 S.Ct. 673, 82 L.Ed. 975, as was pointed out by the Second Circuit in Commissioner [of Internal Revenue] v. Waldman's Estate, 196 F.2d 83. We do not believe, however, that the Guaranty Trust Company Case is controlling. There, the partnership was concluded with the death of a partner and if subsequent partnership distributions were not included in the return made for the deceased, it would not be taxable. Section 126 (a) (1) was passed shortly after the Guaranty Trust Company decision, and appears to have been for the purpose of closing the loophole in the tax laws pointed out in that case. The identical question before us has been considered by the Third, Fifth, and Eighth Circuits, which have held contrary to the contention of the Commissioner here. Henderson's Estate v. Commissioner of Internal Revenue, 5 Cir., 155 F.2d 310, 164 A.L.R. 1030; Girard Trust Co. v. United States, 3 Cir., 182 F.2d 921; Commissioner of Internal Revenue v. Mnookin's Estate, 8 Cir., 184 F.2d 89. Substantially all of the Commissioner's arguments here are fully answered in the Girard Trust Company Case, to which views we adhere." [215 F.2d 80.]
 
 
 47
 The Internal Revenue Code of 1954 makes it clear that as to cases governed by its provisions "the taxable year of a partnership shall not close as the result of the death of a partner" 26 U.S.C. § 706(c) (1); but this was not intended as a change but as a clarification of existing law. In the Senate Finance Committee's report on the code it is said (S. Report No. 1622 on H.R. 8300, 83rd Cong. 2d Sess. pp. 89, 91):
 
 
 48
 "Under present law there has been the contention that the death of a partner closes the partnership year and the bunching of more than a year's income in the decedent's last year. Where the partnership and the partners are on different taxable years, this would have the effect of concentrating as much as 23 months' income in the final return of the deceased partner * * *. Both the House and your committee's bill make it clear that the partnership year does not close upon the death of the partner. The partnership year will run to its normal conclusion, and the decedent's share of the income for this year will be taxable to the estate. To the extent that the right to receive this income constitutes income in respect of a decedent, the estate is entitled to a deduction for estate tax attributable to the inclusion in the decedent's estate." U.S.Code Cong. & Adm.News 1954, p. 4723.
 
 
 49
 For the reasons stated, it seems clear that the partnership was continued for the purpose of winding up its affairs until January 31, 1948, and that the share of the income to which Howard was entitled subsequent to January 31, 1947 was properly reported by him as income of the year 1948. I think that the same is true as to the partnership income to be reported by the estate of Frank. While it is true that the amounts received by Frank were received from the partnership as salary in 1947 prior to his death, the rule applies that partners' salaries and interest paid between the close of the partnership's fiscal year and the partners' individual tax periods should not be reported by individuals until the partnership's full year has elapsed. Thompson, 18 B.T.A. 1192(A). The partnership might have a net loss for the year, and in this event the salary would not be income, but a withdrawal of capital. 1 Montgomery's Federal Taxes 1294 (1951-52). The rule applicable is thus stated by the Tax Court:
 
 
 50
 "An agreement between partners to pay salaries from profits is nothing more than the determination of a basis for dividing such profits. A partner devoting his time and energies to the business of the firm is in fact working for himself and cannot be considered as an employee of the firm in the sense that he is in the service of another. It follows, therefore, that he can not be paid a salary by the firm out of earnings in the sense of compensation for services rendered to an employer. In effect any allowances drawn by a partner from partnership assets are payments which he makes to himself and no man can be his own employer or employee. A partner receiving a salary is merely transferring money from one to another of his own pockets." Estate of S. U. Tilton, 8 B.T.A. 914, 916.
 
 
 51
 To same effect: Appeal of J. H. Goadby Mills, 3 B.T.A. 1245; Melville v. Thompson, 18 B.T.A. 1192(A).
 
 
 52
 I would accordingly reverse the decision of the Tax Court to the effect that the earnings of the partnership were taxable as income to the partners for the year 1947 and not at the end of the partnership's fiscal year in 1948. The injustice and hardship of requiring taxpayers to pay tax on partnership income for 22 months in a single year is obvious. Their position that partnership income for the fiscal year ending in 1948 should be taxable to them in that year, accords, in my opinion, with the reasonable interpretation of the applicable statute. Such interpretation not only avoids injustice and hardship in this case, but recognizes a rule which is just and right in any case where a partnership is dissolved by the death of a partner but its business is continued by the survivor or survivors for the purpose of winding up its affairs.
 
 
 
 Notes:
 
 
 [1]
 The applicable provision of the partnership agreement is as follows:
 "Eleven. It is agreed among the partners hereto, anything in this agreement to the contrary notwithstanding, that in the event of any partner's death, the amount to the credit of said deceased partner on the firm's books on February 1, 1943, or on February 1 in any subsequent year, provided the partnership has run for twelve consecutive months; otherwise the date of settlement shall be as of the prior February 1, less the amount of his withdrawals over salary, shall be paid to the executors or administrators of said deceased partner, and same shall be in full settlement of the deceased partner's interest in said partnership."
 
 
 [2]
 If the profits had been wiped out, the "salary" paid Frank would have been paid, not from profits, but from capital. 1 Montgomery's Federal Taxes 1294
 
 
 [3]
 A loophole in the tax law which was closed by the subsequent enactment of Sec. 126 of Title 26 of the U.S.Code, which provides:
 "The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of: (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent; * *."
 
 
 [4]
 These rulings provide in part as follows:
 "Rev.Rul. 144, 1953-2 Cum.Bull. 212, 213: Accordingly, it is held that a change in the membership of a partnership resulting from the death, withdrawal, substitution, or, addition of a partner, or a shift of interests among existing partners does not, in itself, effect a termination of a partnership for Federal income tax purposes. Ordinarily, a partnership will be treated as continuing where the business of the partnership, or a substantial portion thereof, is continued. The returns of a continuing partnership should continue to be filed on the basis of the annual accounting period previously established by the partnership.
 "Rev.Rul. 54-26, 1954-1 Cum.Bul. 153: Rev.Rul. 144, C.B. 1953-2, 212, revoked O.D. 228, C.B. 1, 190 (1919) and holds that a change in the membership of a partnership resulting from the death, withdrawal, substitution, or addition of a partner, or a shift of interest among existing partners does not, in itself, effect a termination of a partnership for Federal income tax purposes. Rev.Rul. 144 also holds that a partnership's basis in its assets is distinct from the partners' bases in their partnership interest, and is not affected by changes in such partnership interests. However, the bases of the interests of the partners may be affected by any change in membership.
 "In view of the fact that Revenue Ruling 144 was not published until August 3, 1953, the Internal Revenue Service, under the authority of section 3791 (b) of the Internal Revenue Code, will not require the provisions of that Revenue Ruling to be applied with respect to those changes in partnership interests which occurred prior to January 1, 1954.
 "Rev.Rule 54-55, 1954-1 Cum.Bull. 153-154: Effect of the death of a partner in the case of a partnership consisting of only two partners. Advice is requested whether Rev.Rul. 144 C.B. 1953-2, 212, holding that a change in the membership of a partnership resulting from the death, withdrawal, substitution, or addition of a partner or a shift of interests among existing partners does not, in itself effect a termination of a partnership for Federal income tax purposes, applies to a case where one of two partners dies.
 "In some cases the surviving partner and the estate of the deceased partner continue the business as a partnership within the meaning of section 3797(a) (2) of the Internal Revenue Code. In this situation the rule of Rev.Rul. 144 is applicable.
 "In other cases the partnership business is wound up over a period of time and the deceased partner's estate continues decedent's interest in the profits and losses of the business during the winding-up period. In this situation the partnership continues throughout such period. See Heiner v. Mellon, 304 U.S. 271 [58 S.Ct. 926, 82 L.Ed. 1337], Ct.D. 1345, C.B. 1938-1, 349.
 "In other cases the surviving partner, pursuant to an obligation undertaken in the partnership agreement, purchases the decedent's interest in the partnership from the decedent's estate for an amount fixed or determinable as of the date of decedent's death. In this situation the partnership terminates for Federal income tax purposes on the date of decedent's death.
 "Since this Revenue Ruling applies the principles stated in Rev.Rul. 144 to the facts herein, it will be given nonretroactive application to the same extent as Rev.Rul. 144, and accordingly, pursuant to the authority contained in section 3791(b) of the Code, the Internal Revenue Service will not require this Revenue Ruling to be applied with respect to those changes in partnership interests which occurred prior to January 1, 1954. See Rev.Rul. 54-26, page 153, this Bulletin."