**Lewis SCHIMBERG, Executor of the Estate of Anna H. Collins, Deceased, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 62 C 986.**

United States District Court
N. D. Illinois, E. D.

April 15, 1965.

Aaron, Aaron, Schimberg & Hess, Chicago, Ill., for plaintiff.

Edward V. Hanrahan U. S. Atty., Chicago, Ill., for defendant.

CAMPBELL, Chief Judge.

This is an action under § 1346(a) of Title 28, United States Code to obtain a refund of federal income taxes allegedly illegally assessed by the District Director of Internal Revenue.

Plaintiff filed a claim for refund with the District Director on April 14, 1961, and the instant suit was commenced more than six months after that date. The District Director has neither allowed the claim nor granted credit, in whole or in part, for the amount claimed. Plaintiff has therefore complied with § 6532(a) (1) of Title 26, United States Code.

The facts, as stipulated by the parties, are as follows: Plaintiff is the Executor of the estate of Anna H. Collins (hereinafter referred to as the decedent), who died on November 29, 1957. On April 15, 1958 plaintiff filed an income tax return for the decedent for the period commencing January 1, 1957 and ending November 29, 1957. Income taxes of $68,-432.72 were paid for said period. Decedent was the sole income beneficiary of

the Phillip Henrici Trust (hereinafter referred to as the "Henrici Trust") and was also a 40% beneficiary of the William M. Collins Trust (hereinafter referred to as the "Collins Trust"). The Henrici Trust kept its books and filed its income tax returns for fiscal years beginning February 1 and ending January 31; the Collins Trust kept its books and filed its income tax returns for fiscal years beginning April 1 and ending March 31. Decedent kept her books and filed income tax returns on the cash basis for calendar years.

In the return, plaintiff included in gross income decedent's share of the income of the Henrici Trust for its fiscal year ended January 31, 1957, and of the Collins Trust for its fiscal year ended March 31, 1957. Plaintiff also included gross income of the Henrici Trust for its fiscal year ended January 31, 1958, which *was actually* distributed to decedent prior to her death. There was also included in gross income the following distributions from the Collins Trust for its fiscal year ended March 31, 1958: $12,967.77 representing income of the trust actually distributed to the decedent prior to her death; and $2,893.02 of trust income which was paid to plaintiff as executor of decedent's estate. The Government now concedes plaintiff's right to recover taxes attributable to the inclusion in the decedent's final return of the last stated amount, i. e., the $2,893.02 which was paid to the estate after the decedent's death.

The remaining dispute and the issue presently before me concerns only sums actually distributed to decedent prior to her death which were earned in a trust year ending after her death. The question, stated simply, is whether these sums should be taxable to the decedent or to her estate.

These funds were not amounts paid for a trust year *ending* with or within the taxable year of the beneficiary. §§

652(c) and 662(c) of the Internal Revenue Code commonly referred to as the "different taxable years rules" provides so far as material here—that if;

> "the taxable year of the beneficiary is different from that of the trust, the amount which the beneficiary is required to include in gross income in accordance with the provisions of this section shall be based upon the amount of income of the trust for any taxable year or years of the trust ending *within* or *with* his taxable year." (emphasis added)

Treasury Regulations promulgated to implement these sections draw an exception to the above rule where—because of the beneficiary's death—the taxable year of the trust does not end within or with the last taxable year of the beneficiary. (T.R. 1.652(c) (2) and 1.662(c) (2). In such cases, so state the regulations, a cash basis beneficiary must include in gross income, amounts actually received prior to death. In compliance with these regulations, plaintiff included in gross income amounts actually received by the decedent from the respective trusts for the periods February 1, 1957, (Henrici Trust) and April 1, 1957, (Collins Trust) to November 29, 1957, the date of her death.

Plaintiff does not question the applicability of the regulations to the facts, but contends instead that the regulations are arbitrary, unreasonable and inconsistent with the expressed provisions of the Revenue Act (§§ 652(c) and 662(c) ) and as such are illegal and void. He argues that the regulations work undue and unintended hardship on a deceased trust beneficiary because their application may result in a "bunching" of more than 12 months trust income in the last return of the decedent.[1] He further argues that the rule applicable to an analogous partnership situation—which avoids the harsh rule of "bunching" income in the last return of a decedent partner—should be applied to trust beneficiaries.

---

1. Application of these regulations in the instant case caused a "bunching" of approximately 22 months income from the

Henrici Trust and 20 months income from the Collins Trust in the last tax return of the decedent.

Although the arguments advanced by the plaintiff are impressive and may even suggest a more desirable approach, I find that these regulations are generally reasonable and non-oppressive in their application, and are not inconsistent with the Revenue Act. Though, admittedly, in some cases [2] these regulations may increase the tax burden of the beneficiary by bunching income in his last return, yet I find in the basic statute no intent on the part of Congress to relieve this apparent hardship.

In considering whether a decedent trust beneficiary should be given tax treatment similar to a decedent partner, I have found a review of the legislative history and case law development of the "analogous" partnership sections quite enlightening.

The Internal Revenue Code's sub-chapter on partners and partnerships contains a "different taxable year rule" very similar to the sections applicable to trusts.

"Year in which partnership income is includable (1) in computing his taxable income for a taxable year, a partner is required to include his distributive share of partnership items * * * for any partnership year ending within or with his taxable year. * * *" (I.R.C. § 706 (a)).

An early case applying this rule determined that, upon the death of a partner, the partnership would terminate and its taxable year end. (Guaranty Trust Co. of New York v. Commissioner, 303 U.S. 493, 58 S.Ct. 673, 82 L.Ed. 975 (1938)). The effect of this decision was to cause the last "short partnership year" to be included in the last return of the deceased partner, thereby causing a bunching of more than 12 months income in his final return. Later cases circumvented the harshness of this rule by holding that, where the partners had provided by agreement that the partnership would not terminate on the death of a partner, then the partnership taxable year would not end within or with the last taxable year of the decedent partner and the income from that partnership year would not be includable in his final return. This income would instead be included in the return of his estate filed after the end of the partnership year.[3] (See Commissioner of Internal Revenue v. Mnookin, 184 F.2d 89 (8th Cir. 1950); Girard Trust Co. v. U. S., 182 F.2d 921 (3rd Cir. 1950); and Henderson's Estate v. Commissioner of Internal Revenue, 155 F.2d 310 (5th Cir. 1946). These cases, however, lay stress on the fact that, because the partnership does not terminate, the translation of earnings into individual income is deferred until the end of the next partnership fiscal year with no partnership gain or loss to report for the period immediately preceding death. They further indicate that if an accounting and distribution of profits had occurred upon the death of a partner that income would be taxable to the decedent. This distinction was noted by the Court of Appeals for the Fourth Circuit in Knipps Estate v. Commissioner of Internal Revenue, 244 F.2d 436, 441, where after citing the above cases the court remarked:

"In those cases (unlike the case before that court) there was a continuation of the sharing of partnership income after the death of a partner.

2. The application of the regulations may also work to the benefit of the taxpayer in some cases, e. g. if he is in a lower tax bracket than this estate.

3. Subsequent to the Guaranty Trust case, Congress enacted a Code Section similar to present § 691 to provide for the taxing of estates for rights and income accrued from the decedents. In Guaranty the court noted p. 497, 58 S.Ct. 673 that had the partnership between held not terminated and the income not taxable to the decedent it would have *escaped tax altogether*. The Girard case suggests that this fact controls the Guaranty holding and that passage of § 126 (now 691 eliminates the necessity for following the Guaranty case. A later case, Knipps Estate v. Commissioner of Internal Revenue, 244 F.2d 436 (4 Cir. 1957) specifically disavows this interpretation.

The two situations are so different as to require a difference in result."

■ In this light it is interesting to note that state law in the instant case commands an accounting upon the death of a trust beneficiary. (Income and Principal Act, Illinois Rev.Stat. c. 30, § 162). And while federal revenue laws are not deemed subject to state law, a district court may look to local law to appraise the nature of the transaction or the legal effect of facts presented.

To finally alleviate the burdens of bunched income, as it affected partnerships, the code sub-chapter on partners and partnerships was amended and the Congress added § 706(c), which provides in general that the taxable year of the partnership shall not close as the result of the death of a partner. (I.R.C. § 706 (c); See also U. S. Code Congressional and Administrative News, 1954 p. H.R. 4093) No like provision has been made for a trust.

Congress was not unaware of the problem as it affected trust beneficiaries. A leading text (Montgomery, Income Taxation of Estates, Trusts and Gifts 1951–52) published before the 1954 amendment of the Code, recites at page 246, a factual situation not dissimilar from the case at bar.

"The Treasury has ruled that where a life income beneficiary of a trust having a fiscal year ending September 30 dies the succeeding November 1 the currently distributable income of the trust for its fiscal year ended September 30 and the currently distributable income of the trust for the period October 1 to November 1 are both includable in the decedent beneficiaries final return, whether or not the trust terminates on the death of the beneficiary. (Special Ruling Letter, Dated February 6, 1947 Signed by E. I. McLarney, Deputy Commissioner)".

Plaintiff has further attempted to strengthen the alleged partnership "analogy" by noting a Treasury Regulation which provides that a trust shall not terminate with the death of a beneficiary. (T.R.I. 641(b) (3) (a)) My reading of that regulation is that the trust shall not terminate *as to the trustee* and any surviving beneficiaries and that therefore no *trust return* must be filed on the death of a beneficiary. However, as to the individual return of the decedent, the specific regulations (1.652(c) (2) and 1.662 (c) (2) remain controlling.

Turning to the regulations themselves, I believe their reasonableness is amply evidenced by the fact that it is not necessary to include all distributable net income of the trust earned and accrued at the date of death, but only that distributable net income which was actually distributed to and received by the decedent beneficiary prior to his death. This factor somewhat reduces the extent to which income is bunched in the last year. The hardship attributed to the bunching of income may also be avoided by withholding distribution of trust income until the end of the trust year. It is difficult to find oppressive a regulation which attempts only to impose tax liability on income the taxpayer has actually received and enjoyed prior to the taxing date.

The hardship of bunching is also mitigated by the fact that by choosing a *fiscal* trust year, the beneficiary has had the benefit of postponing the tax burden on income received in the past. In Knipps Estate, supra at 443, of 244 F.2d the court stated with respect to the hardship of bunching income:

"Moreover, were the hardship of bunching a pertinent consideration, it would be mitigated by the fact that for a number of years, these taxpayers had the advantage of paying their taxes almost a year late because the partnership fiscal year deferred taxes on eleven months of

firm profits until the following year."

In light of the foregoing considerations, I find that the regulations here in question are neither oppressive, unreasonable, nor in conflict with §§ 652(c) and 662(c) of the Internal Revenue Code. The Supreme Court has advised,

"[T]hat Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with the administration of these statutes which should not be overruled except for weighty reasons." Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948).

█ It is therefore hereby ordered that, with exception to the $2,893.02 conceded by the government to have been erroneously taxed and for which sum I hereby award judgment to the plaintiff; the suit be and the same is hereby dismissed and judgment is hereby entered for the defendant.

In view of the foregoing, it is unnecessary to consider the government's suggestion that to tax the estate for income actually received by the decedent would result in an unconstitutional direct tax on principal because the receipts would pass from the decedent to the estate not as income but as principal.

█ In passing however, I should observe that the government suggestion strains somewhat the extent to which a distinction is to be drawn between a decedent and his estate. The executor of an estate is the personal representative of the decedent, and the estate itself acquires all its rights and liabilities from the decedent. I believe this would include any tax liabilities attributable to income received and enjoyed prior to his death. Furthermore, I see no reason why funds of a decedent must change in character from income to principal merely because of their transfer to his estate.

Judgment accordingly.